**In re Gregory ANDERSON and Rose Anderson, Debtors.**

**Colleen M. Olson, Chapter 7 Trustee, Plaintiff/Counter–Defendant,**

**v.**

**David A. Anderson and David Allen Anderson, Defendants/Counter–Plaintiffs.**

**Bankruptcy No. HM 04–90467. Adversary No. 06–99002.**

United States Bankruptcy Court, W.D. Michigan.

Oct. 20, 2006.

Gregory M. Luyt, Esq., Traverse City, MI, for Plaintiff/Counter–Defendant.

Donald W. Bays, Esq., Marquette, MI, for Defendants/Counter–Plaintiffs.

Robert D. Heikkinen, Esq., Marquette, MI, for Debtors.

## *OPINION*

JEFFREY R. HUGHES, Bankruptcy Judge.

Gregory and Rose Marie Anderson ("Debtors") filed a petition for relief under Chapter 7 of the Bankruptcy Code[1] on May 24, 2004. The Chapter 7 Trustee thereafter commenced the above-captioned adversary proceeding against David A. Anderson and David Allen Anderson ("De-

---

**1.** 11 U.S.C. §§ 101, *et seq.* Debtors' petition pre-dates the October 17, 2005 effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Pub.L. No. 109–8, § 1501(b)(1), 119 Stat. 23. However, apart from some changes in enumeration, the provisions of the Bankruptcy Code relevant to the instant case are not affected by those amendments. Therefore, for ease of reference, all citations in this opinion to the Bankruptcy Code will be to the Bankruptcy Code as amended by BAPCPA unless otherwise indicated.

fendants"). The adversary proceeding arose because of hunting property located in Michigan's Upper Peninsula.[2] Debtors owned a one-half undivided interest in this property prior to the commencement of their bankruptcy case. The other undivided one-half interest is owned by Defendants.

Debtors' one-half interest in the hunting property transferred to the bankruptcy estate when they filed their petition. 11 U.S.C. § 541. Consequently, the Chapter 7 Trustee maintains that this interest may be administered by her for the benefit of the bankruptcy estate's creditors. The Chapter 7 Trustee's initial plan was to sell the entire fee in the hunting property and then divide the proceeds between the bankruptcy estate and Defendants according to their respective interests. However, Defendants were not amenable to this plan. Consequently, the Chapter 7 Trustee commenced this adversary proceeding to compel the sale of the Defendants' undivided interest under the authority of Section 363(h).[3]

The Chapter 7 Trustee has now decided that continuing with the adversary proceeding against Defendants is no longer in the best interests of the bankruptcy estate. She has elected instead to settle with Defendants by selling to them the bankruptcy estate's undivided interest in the hunting property. Specifically, the Chapter 7 Trustee has agreed to convey to the Defendants "the estate's interest in the [hunting] Property (after taking into account the Debtor's [sic] claimed exemption)....." ¶ 8, Trustee's 4/7/06 Motion.[4]

The Chapter 7 Trustee has postured the contemplated conveyance as a settlement of claims with Defendants for which she seeks approval pursuant to FED. R.BANKR.P. 9019(a).[5] Consequently, the question presented to the court is whether the Chapter 7 Trustee's decision with respect to the settlement reached is consistent with her duties as a fiduciary to the

---

2. Many Upper Peninsula families own rural acreage which they use as their hunting and fishing "camps." It is common for such property to be divided into tenancies in common or joint tenancies as it is passed from one generation to the next.

3. Section 363(h) permits a bankruptcy trustee to sell a co-owner's undivided interest in property that had been owned by the debtor and the co-owner as of the commencement of the bankruptcy case as tenants in common, joint tenants, or tenants by the entirety provided certain requirements have been met. The bankruptcy trustee's authority to sell the co-owner's undivided interest under Section 363(h) is in addition to the bankruptcy trustee's separate authority under Section 363(b) or (c) to sell the undivided interest that the bankruptcy estate itself acquired in the property as the result of the debtor's commencement of the bankruptcy proceeding. *In re Spears*, 308 B.R. 793, 815 (Bankr.W.D.Mich. 2004) *rev'd* on other grounds 313 B.R. 212 (W.D.Mich.2004).

4. Debtors themselves have objected to the proposed settlement on the basis that it does not account for the exemption they had claimed in the hunting property. Originally, the objection focused only on the Chapter 7 Trustee's apparent intention not to pay Debtors anything from the $13,500 she was to receive notwithstanding Debtors' uncontested exemption regarding the property. However, Debtors then amended their objection to also contend that the settlement should not be approved because Debtors had intended their exemption of the hunting property to be "in-kind" and, therefore the bankruptcy estate no longer had anything to convey.

5.
(a) **Compromise.** On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States trustee, the debtor, and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct. FED.R.BANKR.P. 9019(a).

bankruptcy estate. *In re Dalen*, 259 B.R. 586 (Bankr.W.D.Mich.2001).[6]

■ A bankruptcy trustee has the same duties as any other fiduciary. They are:

> [t]he duty of care (*i.e.*, the obligation not to act negligently), the duty of loyalty (*i.e.*, the obligation not to act in the fiduciary's own interests), and the duty of obedience (*i.e.*, the obligation not to act outside of the fiduciary's permitted authority).

*Dalen*, at 610.

■ In this instance, I will assume that the settlement the Chapter 7 Trustee has reached is consistent with her duties of care and loyalty. However, an issue nonetheless arises with respect to whether the Chapter 7 Trustee's decision is consistent with her duty of obedience, for that duty subsumes that the action contemplated by the Chapter 7 Trustee is lawful. In other words, a bankruptcy trustee can only be obedient if the trustee acts within the bounds of his or her authority and a trustee by definition has no authority to act unlawfully.

■ The lawfulness of the settlement proposed by the Chapter 7 Trustee is at issue because there is a question of whether the Chapter 7 Trustee has any interest to convey to the Defendants in the first place. The settlement the Trustee has reached with Defendants is predicated upon the Chapter 7 Trustee's representation that the bankruptcy estate has something valuable to convey to Defendants in exchange for the $13,500 they have agreed to pay. However, that representation would be clearly false if the bankruptcy estate no longer owns an interest in the hunting property that is to be conveyed. Put simply, the court cannot approve a settlement that is fraudulent in appearance

**6.** *Dalen* holds that court approval of a settlement involving the bankruptcy court is left to the trustee's discretion. *Id.* at 599. The court in *In re OptInRealBig.com, LLC*, 345 B.R. 277 (Bankr.D.Colo.2006) recently disagreed and suggested instead in dictum that court authority is required for each and every settlement a trustee intends to make. However, that court's analysis is wanting. A much better case could be made for its position if Fed.R.Bankr.P. 9019(a) contemplated the actual authorization of the contemplated settlement as opposed to simply its approval. *Compare, e.g.*, Section 364(b) ("The court, after notice and a hearing, *may authorize* the trustee to obtain unsecured credit ....."). However, limiting the court's intervention in the settlement process to only approval of the settlement reached suggests in and of itself that the trustee has the authority to proceed with the settlement in any event. This interpretation is further reinforced by the fact that the permissive word "may" also appears in Fed.R.Bankr.P. 9019(a). *Cf.* 11 U.S.C. § 102(4) ("may not" is prohibitive, not permissive). One is hard pressed to understand why Congress chose a rule instead of a statute and then used such ambivalent words as "approve" and "may" if, as *OptInRealBig.com*

would have it, Congress' intention in adopting that rule was actually to compel the trustee to first seek authority from the court before entering into any settlement on behalf of the estate.

Moreover, *OptInRealBig.com* fails to adequately address the more practical problems raised by its dictum that all settlements involving the bankruptcy estate must be approved. For example, the administration of a bankruptcy estate is rife with settlements and compromises, both big and small. Must the trustee seek court approval of every compromise, no matter how small? A trustee, in comparison, need not secure similar approval when he is selling property of the estate in the ordinary course. 11 U.S.C. § 363(c)(1). What rationale supports a stricter standard for ordinary course settlements?

Finally, *OptInRealBig* incorrectly cites Sixth Circuit law as support for its conclusion. *Reynolds v. Commissioner of Internal Revenue*, 861 F.2d 469, 473 (6th Cir.1988), is not on point and *In re Signet Industries, Inc.*, 165 F.3d 28 (6th Cir.1998), is not binding authority because it was not designated for full-text publication. (Table), 1998 WL 639168. 6 Cir.R. 28(g) and 6 Cir. I.O.P. 206(c).

if not fraudulent in fact, for to give such approval would cast aspersion upon both the Chapter 7 Trustee and the court.[7]

Whether the Chapter 7 Trustee has something to convey to Defendants turns upon the disposition of Debtors' claimed exemption in the undivided interest in the hunting property that Debtors had owned prior to the commencement of their bankruptcy proceeding. Again, that interest became property of the estate when Debtors filed their joint petition. 11 U.S.C. § 541(a)(1). However, the interest acquired by the bankruptcy estate remained subject to Debtors' right to claim it as exempt.

> (b)(1) Notwithstanding section 541 of this title, an individual debtor may exempt from property of the estate the property listed in either paragraph (2) or, in the alternative, paragraph (3) of this subsection....

11 U.S.C. § 522(b)(1).

An exemption is established by listing the property claimed as exempt in Schedule C of the schedules the debtor must file at the commencement of his bankruptcy proceeding. FED.R.BANKR.P. 4003(a). *See also*, FED.R.BANKR.P. 1007(b)(1). Debtors in this instance did not immediately claim the hunting property as exempt. Indeed, Debtors did not even list on Schedule A the hunting property as property they owned when they first filed their schedules.

However, Debtors amended both their Schedule A and Schedule C on October 4, 2004[8] to include the hunting property. Their amended Schedule A described the unencumbered property as:

> 1/2 interest in old cabin. The debtors own a 1/2 interest in an old cabin that may have a total value of about $30,000.
>
> The debtors 1/2 interest would be $15,000.00.

Debtors' amended Schedule C also added the hunting property as a claimed exemption. It too described the property as:

> 1/2 interest in old cabin. The debtors own a 1/2 interest in an old cabin that may have a total value of about $30,000.
>
> The debtors 1/2 interest would be $15,000.00.

Debtors' amended Schedule C also identified Section 522(d)(5)[9] as the basis for the exemption claimed. Finally, Debtors' amended Schedule C set both the current value of the one-half interest in the hunting property and the value of the exemption claimed at $15,000.

---

7. I rejected in *Dalen* the amorphous concepts of "best interests" and "fair and equitable" as the appropriate tests for whether a settlement *should be approved or not under* FED. R.BANKR.P. 9019(a). However, the settlement proposed by the Chapter 7 Trustee in this instance would not appear to measure up to *these standards either. For example, it is* difficult to see how a court could approve as fair and equitable a settlement like the one at hand where the bankruptcy estate is to receive $13,500 in exchange for property *if the* bankruptcy estate has no interest in that property to convey.

8. *Any schedule, including Schedule C, may be* amended by the debtor as a matter of course at any time before the case is closed. FED

R.BANKR P. 1009(a); *see also*, FED.R.BANKR.P. 4003(b). While principles of estoppel in all likelihood temper these rules, the Chapter 7 Trustee has *not argued prejudice or anything else to warrant* application in this instance.

9. Debtors indicated at the top of both the original Schedule C and the amended Schedule C that they intended to take advantage of the "federal" exemptions provided under the Bankruptcy Code. Those exemptions are set forth *in subsection (d) of Section 522.* Section 522(d)(5) permits a debtor to exempt from property of the estate the debtor's interest in any property that became property of *the estate provided that the value of the property* claimed as exempt does not exceed a specified amount.

The Chapter 7 Trustee had until October 18, 2004 [10] to object to the exemptions claimed in Debtors' original Schedule C. However, that deadline was extended with respect to the claimed exemption in the hunting property because that exemption was not asserted until Debtors filed their amended Schedule C on October 4, 2004. Consequently, the Chapter 7 Trustee had until November 3, 2004 to object to Debtors' claimed exemption of the hunting property.

The Chapter 7 Trustee did not file an objection to Debtors' claimed exemption of the hunting property within the required deadline. Nonetheless, the Chapter 7 Trustee contends that the bankruptcy estate still has something to convey to the Defendants in exchange for the $13,500 they have agreed to pay. The Chapter 7 Trustee's argument is based upon her contention that the bankruptcy estate's one-half interest in the hunting property is in fact worth $30,000 as opposed to the $15,000 set forth in Debtors' amended Schedule C. Consequently, it is her position that the bankruptcy estate retains an interest in the hunting property equal to the difference between the actual value of the undivided interest and the $15,000 Debtors have claimed as exempt.

However, the Chapter 7 Trustee's reasoning does not take into account Section 522(*l*). That section states that:

(1) The debtor shall file a list of property that the debtor claims as exempt under subsection (b) of this section. If the debtor does not file such a list, a dependent of the debtor may file such a list, or may claim property as exempt from property of the estate on behalf of the debtor. **Unless a party in interest objects, the property claimed as exempt on such list is exempt.**

11 U.S.C. § 522(*l*) (emphasis added).

In this instance, Debtor's "list of property" [*i.e.,* Debtor's amended Schedule C] clearly describes the exemption claimed as the undivided one-half interest in the hunting property. Moreover, the amount Debtors set as the value of the exemption claimed, $15,000, not only was within the limits established under the Section 522(d)(5) exemption claimed, but also was the exact amount Debtors set as the overall value of the undivided interest in question. It would seem then that Debtors intended to keep as their own the undivided interest in the hunting property when they added that property to their amended Schedule C. Consequently, that interest would have ceased being property of the estate by operation of Section 522(*l*) when neither the Chapter 7 Trustee nor any other party in interest filed an objection within the November 3, 2004 deadline.

This interpretation of Section 522(*l*) is consistent with the Supreme Court's decision in *Taylor v. Freeland & Kronz,* 503 U.S. 638, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992). The debtor in *Taylor* was the plaintiff in a discrimination lawsuit that was on appeal when the debtor filed her bankruptcy petition. Judgment had been entered in the debtor's favor as to liability but no damages had yet been awarded.

The debtor listed the litigation/judgment in her asset schedules as "Proceeds from lawsuit—[*Davis v. TWA*"] and "Claim for lost wages." *Id.* at 640, 112 S.Ct. 1644. She also listed its value as "unknown." The debtor further claimed as exempt all of the

---

**10.** FED.R.BANKR.P. 4003(b) provides that an objection to a claimed exemption must be made no later than 30 days after the Section 341 meeting of creditors has concluded, which, in this case, was September 16, 2004.

The deadline for filing objections to Debtors' original Schedule C was extended from October 16, 2004 to October 18, 2004 because the 16th fell on a Saturday. FED.R.BANKR.P. 9006(a).

award she ultimately expected to receive once damages were assessed. The trustee chose not to object to the exemption claimed.

The defendant ultimately settled the litigation about a year and a half after Debtor filed her petition by paying $110,000. Debtor received $39,000 of this amount and her attorneys, Freeland & Kronz, received the remaining $71,000.

When the trustee learned of the settlement, he sued Freeland & Kronz to recover the $71,000 Debtor had paid it. His theory was that the monies the law firm had received was still property of the estate. Needless to say, Freeland & Kronz disagreed. It asserted that the lawsuit ceased being property of the estate by operation of Section 522($l$) as soon as the deadline under FED.R.BANKR.P. 4003(b) had passed for the trustee and other parties in interest to object to the debtor's claimed exemption of the wage claim.

The trustee agreed that he had not filed a timely objection to the debtor's claimed exemption of the litigation proceeds. Nonetheless, the trustee contended that the debtor's exemption could still be disallowed because the debtor had not claimed the exemption in good faith or because the debtor did not have a colorable basis for claiming the lawsuit as exempt. Indeed, the parties agreed that debtor was actually entitled under the law to claim as exempt only a small portion of the settlement amount ultimately received and that the trustee's objection to the debtor's claimed exemption of the balance would have been sustained had the trustee filed a timely objection.

The bankruptcy court ruled that the debtor's attorneys had to return the portion of the settlement proceeds it had received and the district court affirmed. However, the court of appeals reversed and the Supreme Court affirmed the court of appeals.

The Supreme Court unequivocally held in *Taylor* that the 30-day period established by FED.R.BANKR.P. 4003(b) set a clear deadline within which the trustee or another party in interest must object to an exemption claimed by the debtor. However, equally important in *Taylor* is a separate determination by the court: **that property of the estate that is claimed as exempt ceases being property of the estate once that deadline passes without objection.** Remember, the trustee's claim against Freeland & Kronz, the debtor's attorneys, was that the share of the settlement it had received was still property of the estate because of the debtor's alleged bad faith. However, the Supreme Court rejected this argument and instead accepted Freeland & Kronz's position that the lawsuit ceased being property of the estate when the trustee failed to object to the debtor's claimed exemption of the lawsuit more than two years before.

Section 522($l$), then, operates to remove from the bankruptcy estate interests that had become property of the estate in a fashion similar to abandonment under Section 554. The difference is that the "abandonment" effectuated by Section 522($l$) is automatic, whereas the abandonment contemplated by Section 554(a) requires a party's initiative and is conditioned upon notice and an opportunity to be heard.[11]

11. Section 554(b) actually is the authority under which a party in interest may compel the trustee's abandonment of property from the estate. However, Section 554(a) remains relevant because Section 554(b) addresses only the question of whether the trustee must abandon the property over his objection. The trustee would still have to actually abandon the property after notice and opportunity to the creditor matrix once the Section 554(b) order was entered. *See also,* FED.R.BANKR.P. 6007(a).

■ Congress' desire to provide a bankrupt debtor with a "fresh start" justifies this difference. Exempt property never became property of the estate under the former Bankruptcy Act. *See, generally,* 5 *Collier on Bankruptcy,* ¶ 541.HH[1]-[3]. (15th Ed. rev.2005). Therefore, prior to the enactment of the Bankruptcy Code, the debtor was free to immediately exploit whatever exemption the law permitted him notwithstanding the commencement of the bankruptcy proceeding and the attendant creation of the bankruptcy estate. However, the Bankruptcy Code no longer excludes from the bankruptcy estate property that is subject to exemption. Rather, all property, including property that the debtor intends to exempt, becomes property of the bankruptcy estate upon the commencement of the bankruptcy case. *See Johnston v. Hazlett (In re Johnston),* 209 F.3d 611, 613 (6th Cir.2000) (citation omitted). *See also, In re Grosslight,* 757 F.2d 773, 775 (6th Cir.1985). Therefore, it is imperative that there be some device within the Bankruptcy Code for the debtor to quickly and efficiently remove from the bankruptcy estate the property he is allowed to exempt so that he may enjoy his fresh start. That device is Section 522(*l* ). Put simply, Section 522(*l* ), coupled with FED.R.BANKR.P. 4003(b), places the burden squarely on the trustee's shoulders to act if the trustee has a question or a concern about an exemption claimed. Otherwise, as the Supreme Court ruled in *Taylor,* the opportunity is lost. The exempted property automatically revests with the debtor so that he may proceed with his fresh start.

The Chapter 7 Trustee accepts, as she must, that *Taylor* is controlling law in this instance. However, the Chapter 7 Trustee contends that Debtors' undivided interest in the hunting property is still property of the estate notwithstanding the Chapter 7 Trustee's failure to file a timely objection to the exemption claimed by Debtors because, according to the Chapter 7 Trustee, the value of the undivided interest is $30,000 and Debtors have claimed as exempt only $15,000 of that interest.

The Chapter 7 Trustee relies upon three cases in support of her position: *In re Heflin,* 215 B.R. 530 (Bankr.W.D.Mich. 1997); *In re Bregni,* 215 B.R. 850 (Bankr. E.D.Mich.1997); and *In re Einkorn,* 330 B.R. 570 (Bankr.E.D.Mich.2005). All of these cases involved similar facts. In *Heflin,* the debtor listed 40 acres of vacant land with a value of $16,000, he indicated that it was subject to a $431.25 lien, and he valued the exemption claimed as $15,579 ($15,000 pursuant to Section 522(d)(1) and $579 pursuant to Section 522(d)(5)). In *Bregni,* the debtors listed a condominium unit with a value of $120,000, they indicated that it was subject to a $90,000 lien, and they valued the exemption claimed at $30,000 ($15,000 each pursuant to Section (522)(d)(1)). In *Einkorn,* the debtors listed a timeshare with a value of $1,000, they indicated that it was subject to a $1,000 lien, and they valued the exemption claimed at one dollar pursuant to Section 522(d)(5).

None of the Chapter 7 trustees objected to the exemptions claimed by the debtors in any of these cases. Nonetheless, the question later arose as to what each of the debtors had exempted. In *Heflin* and *Bregni,* the debtors brought motions to compel the trustees to abandon the exempted interests pursuant to Section 554(b) and in *Einkorn,* the debtors had objected to the trustee's Section 363(b) motion for authority to sell the timeshare. What prompted the dispute in each instance was that the net value of the subject property at the time of the dispute (*i.e.,* gross value less liens) was greater than the value the debtors had given in their Schedule C's to the property set forth therein.

The trustee in each of the cases argued that he should be allowed to liquidate the property in question and account to the debtors from the proceeds for only the dollar amount of the exemption claimed. For example, in *Bregni*, the trustee argued that the debtor should receive only $30,000 of the $158,000 in proceeds he had realized from the sale of the condominium and that the balance, net of liens, belonged to the bankruptcy estate.[12]

The courts in *Heflin*, *Bregni*, and *Einkorn* all found in favor of the trustees. In *Heflin* and *Bregni*, the courts denied the debtors' Section 554(b) motion to compel an abandonment of the subject interests. In *Einkorn*, the court overruled the debtor's objection of the proposed sale and otherwise authorized the trustee to proceed.

*Heflin*, *Bregni*, and *Einkorn* each distinguished *Taylor* based upon the different manner in which the debtors before them had claimed their exemptions. The *Taylor* debtor, they noted, had set the value of her claimed exemption in the lawsuit as unknown and therefore they agreed that the *Taylor* trustee had been placed on sufficient notice to warrant an objection within the time proscribed by FED. R.BANKR.P. 4003(b).[13]

However, none of the courts in *Heflin*, *Bregni*, or *Einkorn* found a similar "red flag" in the cases before them. As the court in *Heflin* observed:

[I]n this case the Debtor did not indicate in his schedules that he intended to claim the entire value of the Property as exempt, regardless of its eventual sale price or market value. Instead, the Debtor's schedules set forth specific dollar amounts, i.e., $15,000 and $579 which are consonant with the maximum statutory exemptions. Again, the Trustee had no reason to object to the amount of the exemptions because they were within the limits established by the Code. Thus, unlike the facts in *Taylor*, this case does not involve a situation where the Trustee has failed to object to an improper exemption and then is bound by the consequences of his decision. Rather, the Trustee in this case did not object because there was both a valid statutory basis for the exemptions and the amount was within the statutory limits. Indeed, if the Trustee had filed an objection, it most likely would have been denied because the specific exemptions claimed in the Debtor's schedules are legally valid.

*Heflin*, 215 B.R. at 533–34. *See also*, *Bregni*, 215 B.R. at 852–53; *Einkorn*, 330 B.R. at 571.

Such reasoning certainly has visceral appeal. Penalizing the bankruptcy estate because the trustee failed to file a baseless objection would be absurd. However, the absurdity evaporates if, as *Heflin*, *Bregni*, and *Einkorn* all acknowledge, the trustee had had sufficient notice of the debtors' true intentions at the time they claimed the vacant land, condominium, and timeshare as exempt.[14] For example, it is fair

---

**12.** The trustee in *Heflin* contended that the vacant property was in fact worth $40,000. However, the trustee apparently had not yet attempted to sell the property at that price. As for *Einkorn*, the trustee presumably had a sale pending for the timeshare for an amount in excess of the $1,000 mortgage and the $1.00 claimed by the Einkorns. However, the *Einkorn* opinion does not disclose how much in excess of $1,001 the trustee expected to realize from its disposition.

**13.** *Heflin* also characterized the debtor's failure in *Taylor* to cite specific statutory authority for the exemption claimed as another "red flag" that had placed the trustee in that case on notice.

**14.** Indeed, *Heflin*, *Bregni*, and *Einkorn* must concede this point, for *Taylor* unequivocally

to assume that the court in *Einkorn* would not have permitted the trustee to proceed with the sale of the timeshare had the debtors, in its opinion, more articulately indicated that the exempt property they wanted to retain for their fresh start was the timeshare itself as opposed to a crisp one dollar bill. However, *Heflin, Bregni,* and *Einkorn's* concession on this point necessarily raises the question of whether the debtors' efforts in those cases were in fact insufficient to accomplish a so-called "in-kind" exemption of the property they had selected as exempt. In other words, were the trustees in those cases justified in later maintaining that the bankruptcy estate still had an interest in the property the debtors had claimed as exempt even though the trustees never filed an objection within the time frame proscribed by FED.R.BANKR.P. 4003(b)?

The debtors' supposed shortcoming in *Heflin, Bregni,* and *Einkorn* was their failure to express with adequate clarity in their Schedule C's their intention to claim the property described as an in-kind exemption.

> Finally, binding a trustee to a debtor's estimated scheduled fair market value as a means of exempting the entire property subverts the Congressional intent of providing a fresh start for the honest but unfortunate debtor. If a debtor intends to fully exempt a particular piece of property in its entirety, regardless of its value, then the debtor

should unambiguously express this intention in his schedules. Where the debtor makes a clear manifestation of his intent to seek an unlimited exemption in a specific piece of property, then the trustee has ample notice and can either file an objection or seek an extension of time in which to conduct further investigation.

*Heflin,* 215 B.R. at 536. *See also, Bregni,* 215 B.R. at 850 and *Einkorn,* 330 B.R. at 571. However, *Heflin, Bregni,* and *Einkorn* are circumspect as to exactly how the debtors were to make their intention any clearer than they had. The Federal Rules of Bankruptcy Procedure require a debtor to use Schedule C to claim his or her exemptions. FED.R.BANKR.P. 4003(a). Moreover, the schedule used must substantially conform with the official form that accompanies the rules. FED. R.BANKR.P. 1007(b)(1). What is notable about this form, though, is that there is nothing within its four corners that would prompt a debtor who wishes to take an in-kind exemption of property to include the additional language that *Heflin* believes is necessary to manifest that intention. Indeed, all that the official form requires is a description of the claimed property, a specification of the applicable law, and a valuation of both the property itself and the portion claimed by the debtor as exempt.

The *Heflin* debtor's Schedule C substantially conformed with the official form.

---

stands for the proposition that all objections to exemptions claimed must be made within the time proscribed by FED.R.BANKR.P. 4003(b). *Heflin, Bregni,* and *Einkorn* all concluded that this proscription was inapplicable under the facts presented because there was never any objection to be made. That is, the trustee had no reason to object if the debtor was only claiming as exempt the cash equivalent of whatever piece of property was being described. However, there is no question that these courts would have had to come to

the opposite conclusion had those debtors in fact met their standard for establishing an intention to take an in-kind exemption. Otherwise, *Heflin, Bregni,* and *Einkorn* would have had to explain how the bankruptcy estate could continue to hold an interest capable of being sold under the authority of Section 363(b) when Section 522(*l*) and *Taylor* are quite clear that the bankruptcy estate no longer retains any interest if the property has been claimed as exempt and no timely objection has been filed.

How, then, was that debtor to divine that something more had to be included in his Schedule C if that debtor wanted to keep the property he had described in the schedule as an in-kind exemption? What is the magic language that the *Heflin* debtor should have added to more clearly manifest his intention to keep the vacant land as his own? Are those who in good faith fill out Schedule C with the intention of exempting the described property in-kind nonetheless subject to losing that exemption simply because they are not schooled in the idiosyncrasies of that particular court? [15]

The debtor in *Heflin* chose to contest the trustee's right to retain the vacant land by filing a motion to compel abandonment. Wouldn't a more effective approach have been to simply amend the debtor's Schedule C to include the "clear manifestation" of intent the *Heflin* court found was lacking in the original Schedule C? After all, Schedule C, like all other schedules, may be amended at any time. FED.R.BANKR.P. 1009(a). However, if amendment of the schedules would have sufficed, then one must ask why even an amendment is nec-

essary. At most, the *Heflin* debtor's intentions concerning the vacant land as set forth in his original Schedule C were ambiguous. As such, the trustee could have, but did not, clear up that ambiguity at the *Heflin* debtor's first meeting of creditors. Should not the trustee have engaged the issue at that point in time, especially given that it was the trustee, not the debtor, who had the burden to establish that the exemption claimed was not appropriate? FED.R.BANKR.P. 4003(c). Why, then, place the burden upon the debtor to clear up the ambiguity at some later date through an amendment to his schedules? [16]

In effect, *Heflin*, *Bregni*, and *Einkorn* all create a judicial presumption that a debtor, in preparing his or her Schedule C, would prefer to receive cash instead of the property described absent a more specific declaration to the contrary. However, that is a dubious presumption. For example, in this instance, Debtors' Schedule C indicates that Mr. Anderson claims four guns as exempt under Section 522(d)(5), that their value is $500, and that the value of the exemption is $500. Should the

---

15. *Heflin* argues that a debtor would be subverting the fresh start envisioned by Congress if he or she were to be permitted to take an in-kind exemption without expressing a "clear manifestation of his intent" in his Schedule C. *Heflin*, 215 B.R. at 536. Apparently, *Heflin* arrived at this conclusion based upon the notion that the fresh start offered by the Bankruptcy Code is available to only the "honest but unfortunate debtor." *Id.* However, I am at a loss as to how a debtor who in good faith completes the official form for Schedule C can be characterized as dishonest, especially when the trustee is in a position to easily eliminate whatever ambiguity there may be concerning the debtor's intention to take an in-kind exemption or not by asking a few simple questions at the first meeting of creditors.

16. Of course, a trustee might contend at the time of the subsequent amendment that the debtor should be estopped from amending his

Schedule C notwithstanding FED.R.BANKR.P. 1009(a). However, the trustee would have to establish some prejudice or bad faith in order to prevail. *Kaelin v. Bassett (In re Kaelin)*, 308 F.3d 885 (8th Cir.2002); *Arnold v. Gill (In re Arnold)*, 252 B.R. 778, 784 (9th Cir. BAP2000) (compiling cases). Consequently, the trustee would be compelled in any event to explain why he did not attempt to clear up whatever ambiguity there might have been in the debtor's original Schedule C regarding the debtor's intentions when he had the opportunity to do so at the first meeting. Therefore, the question remains as to why the debtor should be compelled to go through the exercise of amending his Schedule C at a later date to more clearly express his intentions when the issue is ultimately going to turn in any event on whether the trustee was prejudiced or not by what the debtor disclosed in his original Schedule C.

Chapter 7 Trustee also interpret this claimed exemption as a go ahead by Mr. Anderson to liquidate the guns in the event she is later of the opinion that the guns are of a greater value? Or should the Chapter 7 Trustee, when reviewing Debtors' Schedule C, assume that Mr. Anderson, by setting the value of the claimed exemption of the guns at the same amount as their value, actually intended to exempt the guns themselves?

Debtors in this instance have also claimed as exempt their clothing under Section 522(d)(3). Their Schedule C further indicates that both the current value of the clothing and the value of the claimed exemption is $200. Is it nonetheless reasonable for the Chapter 7 Trustee to assume that the Debtors do not care whether she sells their clothing and gives them cash instead?

The answer to these questions is obvious. Debtors do not, as a general rule, want their possessions liquidated. Rather, debtors prefer to keep as exempt whatever they currently own so as to make their fresh start as seamless as possible. Section 522 itself reflects this preference, for subsection (b) speaks of exempting *property,* not *values.*

> [A]n individual debtor may exempt from property of the estate the **property** listed in either paragraph (2) or, in the alternative, paragraph (3) of this subsection.

11 U.S.C. § 522(b) (emphasis added).

Section 522(d)'s reference to "interests" also reflects this preference. For example, Section 522(d)(1) permits the debtor to exempt from property of the estate his "interest" in his home and Section 522(d)(2) permits him to exempt his "interest" in his car. Granted, Section 522(d) imposes value limits upon the interest that may be claimed as exempt. However, there is no question under Section 522(d)(1) that a debtor is entitled to keep his interest in his residence as his (d)(1) exemption instead of receiving its cash equivalent provided that the value of that interest is equal to or less than the $18,450 limit imposed.

*Heflin, Bregni,* and *Einkorn* all contend that a trustee would be placed in an untenable position if he were required to object to valuation issues as part of the exemption process contemplated by Section 522(*l*) and Rule 4003(b). *See, e.g., Heflin,* 215 B.R. at 535. Indeed, the court in *Heflin* suggested that it would be improper for a trustee to raise undervaluation as an objection in connection with the exemption process. *Id.* at 534. I disagree.

In the instant case, Debtors have been as forthright as the official form Schedule C has permitted them to be to declare an in-kind Section 522(d)(5) exemption in their undivided interest in the hunting property. Again, Debtors have described the claimed exemption as a "1/2 interest in old cabin" and have set the current market value and the claimed exemption at $15,000, which is well within the value limits imposed by the Section 522(d)(5) exemption claimed. What now prompts the Chapter 7 Trustee's interest in the hunting property is her discovery that the hunting property may be worth $60,000, and, therefore, Debtors' undivided one-half interest may be $30,000, instead of the $15,000 set forth in Schedule C. *Heflin, Bregni* and *Einkorn* would all excuse the Chapter 7 trustee from not raising the valuation issue as part of the exemption process. Why? After all, Debtors' assessment in their Schedule C of the hunting property's value is nothing more than their opinion. Debtors' valuation at a minimum should have prompted at least some inquiry by the Chapter 7 Trustee as to its soundness. Was it based upon an apprais-

al? The state equalized value? [17] Debtors' unsupported guess? Obviously, Debtors' responses to such questions, coupled with the Chapter 7 Trustee's experience, would have dictated whether further inquiry, and perhaps an objection, was warranted.

Moreover, the Chapter 7 Trustee's only apparent explanation for why she did not discover that the hunting property had a greater value than that disclosed by Debtors until after the Rule 4003(b) objection deadline had passed is that she did not have time. However, lack of time is not an acceptable excuse. As the Supreme Court observed in *Taylor*, "[d]eadlines may lead to unwelcome results, but they prompt parties to act and they produce finality." *Taylor v. Freeland & Kronz*, 503 U.S. at 644, 112 S.Ct. at 1648. In this instance, the Chapter 7 Trustee's fiduciary duty, if not her curiosity, required her to investigate Debtors' valuation of the hunting property when they disclosed it in their Schedule C as exempt as opposed to whenever she got around to it.[18]

*Heflin, Bregni,* and *Einkorn* all were concerned that a trustee would be compelled "to object first and ask questions later" if she were required to raise valuation concerns as part of the exemption process. However, the concern is unfounded, for the trustee always can request the court to extend the 30–day deadline to object. FED.R.BANKR.P. 4003(b). The 30–day deadline does not even begin to run until that meeting has concluded. *Id.* Therefore, a savvy trustee can achieve a *de facto* extension of at least some duration simply by keeping the Section 341 meeting open.

Another concern expressed in *Heflin, Bregni,* and *Einkorn* was that an unscrupulous debtor might intentionally understate the value of property that became property of the estate on the hope that it would then revest with him or her as exempt property by operation of Section 522(*l*). However, as the Court explained in *Taylor*, the trustee has recourse to address such conduct as well. *Taylor*, 503 U.S. at 643, 112 S.Ct. at 1648. For example, a knowing and fraudulent statement under oath not only is grounds for denying a discharge, 11 U.S.C. § 727(4)(A), but also grounds to revoke a discharge already granted. 11 U.S.C. § 727(d)(1). Such conduct could also warrant criminal prosecution. 18 U.S.C. § 152(2) (bankruptcy fraud). *See also,* 18 U.S.C. § 1341 (mail fraud) and 18 U.S.C. § 1343 (wire fraud). Indeed, the trustee could conceivably recover the property that had been fraudulently exempted by the debtor and/or damages under Section 549 on the theory that the Section 522(*l*) transfer effectuated by the debtor's claimed exemption of the undervalued property was procured by fraud and therefore was *per se* invalid.

The *Heflin* and *Bregni* debtors both contended that the difference between what they claimed as the value of the exempted property in their schedules and what the trustee later claimed was the actual value was due to post-petition appreciation of the subject property. It is unclear in *Heflin* as to what, if any, affect

---

**17.** Real estate located in Michigan is ascribed an "equalized" value for purposes of assessing property taxes. Debtors, trustees and other parties in interest often use this figure as a measure of the property's fair market value.

**18.** The Chapter 7 Trustee bases her opinion that the estate's interest in the hunting property as worth $30,000 upon a realtor's "drive by" assessment of that property. The assessment is set forth in a letter dated September 19, 2005. The Chapter 7 Trustee does not offer any explanation for why this assessment did not take place until almost a year after Debtors filed their claimed exemption in that property.

this argument had upon its analysis. However, the court in *Bregni* apparently accepted the debtor's contention as true but then rejected it as irrelevant.

Bregni also argues that if the amount of the claimed exemption, combined with any secured claims, exceeds or equals the fair market value of the property, the property is exempt in its entirety. As noted, the debtors each claimed a $15,000 exemption, First Security had a secured claim of $90,000, and the debtors listed the value of the property as $120,000. Therefore, Bregni contends, the property was completely exempted and any increase in value belongs to Bregni.

A number of courts have considered and rejected this argument.

*Bregni*, 215 B.R. at 853.

In other words, *Bregni* appears to stand for the proposition that a debtor under no circumstances can take an in-kind exemption of property under Section 522(*l* ). Rather, *Bregni* apparently gives the trustee an unrestricted license to speculate on the post-petition potential of whatever property the debtor has claimed as exempt unless and until the trustee finally chooses to abandon that property or the debtor is able to compel him to do so.

However, such speculation runs counter to both the Bankruptcy Code and to *Taylor*. As already discussed, Section 522(b)(*l* ) unequivocally states that "an individual debtor may exempt from property of the estate **the property** listed in either paragraph (2) [Section 522(b)(2) ] or paragraph (3) [Section 522(b)(3) ] of this subsection" and Section 522(d), in turn, unequivocally states in exemption after exemption allowed thereunder that it is the debtor's "interest" in the property that may be exempted.

(d) The following property may be exempted under subsection (b)(2) of this section:

(1) The debtor's aggregate **interest** . . . in real property. . . .

(2) The debtor's **interest** . . . in one motor vehicle.

(3) The debtor's **interest** . . . in household furnishings . . . .

(4) The debtor's aggregate **interest**, . . . in jewelry . . . .

\*    \*    \*    \*    \*    \*

11 U.S.C. §§ 522(d)(1)—(4). (emphasis added)

Of course, as the court in *Bregni* observed, Section 522(d) does impose limits upon the exemption claimed. A debtor may not claim an in-kind exemption of his interest in his home under Section 522(d)(1) if the value of that interest exceeds $18,450. However, as Section 522(a)(2) makes clear, that determination is to be made as of the date of the debtor's petition.

(2) "value" means fair market value as of the date of the filing of the petition or, with respect to property that becomes property of the estate after such date, as of the date such property becomes property of the estate.

11 U.S.C. § 522(a)(2).

Moreover, it is well established that bankruptcy exemptions are fixed as of the date of the debtor's bankruptcy filing.

"It is hornbook bankruptcy law that a debtor's exemptions are determined as of the time of the filing of his petition." *In re Friedman*, 38 B.R. 275, 276 (Bankr.E.D.Pa.1984) (Friedman). We join these courts finding that bankruptcy exemptions are fixed on the date of filing. See *White v. Stump*, 266 U.S. 310, 313 [45 S.Ct. 103, 104, 69 L.Ed. 301] (1924); *Man-*

*sell v. Carroll,* 379 F.2d 682, 684 (10th Cir.1967).

By holding that exemptions are fixed on the date of filing, *we focus only on the law and facts are they exist on the date of filing the petition.* There is no doubt that the law as it exists on the date of filing determines a debtor's claimed exemption, 11 U.S.C. § 522(b)(2)(A), which allows a debtor to claim state-created exemptions, explicitly provides that the state law applicable on the date the petition is filed governs the exemptions which may be taken. The propriety of limiting our factual investigation to those facts existing on the date of filing is less self-evident. Nevertheless, for the reasons set forth below, *we hold today that only the facts existing on the date of filing are relevant to determining whether a debtor qualifies for a claimed exemption.* (Emphasis supplied.)

*Armstrong v. Peterson (In re Peterson),* 897 F.2d 935, 937 (8th Cir.1990); *cf. Stinson v. Williamson (In the Matter of Williamson),* 804 F.2d 1355, 1359 (5th Cir.1986) (when case converted from Chapter 11 to Chapter 7, exemptions are determined as of the original chapter 11 filing date); *Hollytex Carpet Mills v. Tedford,* 691 F.2d 392, 393 (8th Cir.1982) (chapter 13 plan modification does not change effective date of plan for purpose of electing exemptions).

*Lasich v. Wickstrom (In re Wickstrom),* 113 B.R. 339, 343–44 (Bankr.W.D.Mich. 1990) (emphasis in original).

Assume, for example, that a debtor's interest in his home (*i.e.,* the value of his home less the amount of all liens) is $15,000 at the time of his petition. If the debtor claims his actual interest in the home (as opposed to its cash equivalent) as

exempt under Section 522(d)(1), then the debtor is entitled to the in-kind exemption of that interest unless the trustee not only files a timely objection but also establishes that the value of the claimed interest **as of the date of the debtor's petition** exceeded $18,450. Moreover, the trustee would have the burden of proof regarding valuation. FED.R.BANKR.P. 4003(c). If the trustee was unable to meet that burden, or if the trustee simply failed to file a timely objection, Section 522(*l* ) dictates that the claimed interest will revert to the debtor regardless of whether the value of that interest appreciated or depreciated post-petition.

*Bregni* relied upon *Hyman v. Plotkin (In re Hyman),* 967 F.2d 1316 (9th Cir. 1992) to support its conclusion that all post-petition appreciation of property accrues to the benefit of the bankruptcy estate regardless of whether the subject property has been allowed as exempt. The debtors in *Hyman* objected to the trustee's motion to sell their home. The debtors had previously claimed an exemption in their home based upon the "homestead" exemption permitted under California law. The debtors set the value of that exemption at $45,000, which at the time was the maximum amount permitted under the California statute. As for the home itself, the debtors valued it at $415,000. However, the debtors also disclosed that the home was subject to liens totaling $347,611.

One of the objections raised by the debtors was that they were entitled as a matter of law to whatever appreciation had accrued on the home post-petition. The Ninth Circuit rejected this argument. However, the Ninth Circuit's decision was not based upon its interpretation of the Bankruptcy Code, but rather upon the peculiarities of the state exemption claimed. The Ninth Circuit observed that the Cali-

fornia homestead law did not create an exemption in the home itself. Rather, it created an exemption in only the proceeds realized from the home if the home otherwise were to be sold to satisfy a judgment lienholder.

> [T]he Hymans' claim for appreciation is without merit. The California statute gives the Hymans a $45,000 exemption as of the time of sale, not a $45,000 equity interest in the property. In the normal situation where [California Code of Civil Procedure] section 704.800 is called into play –a sale of property to satisfy a judgment lien–the concept of an interest that fluctuates in value makes no sense because all the relevant events occur on the date of sale.

*Hyman,* 967 F.2d at 1321.

The Ninth Circuit then relied upon this observation to conclude that the outcome should be no different in the context of a bankruptcy proceeding. That is, a bankruptcy trustee selling a debtor's home over the objection of a debtor claiming the California homestead exemption is the same as a judgment lienholder selling the home over the debtor's similar objection outside of a bankruptcy proceeding. A bankruptcy trustee, like a judgment lienholder, cannot sell the home if the selling price, net of all liens and encumbrances, would be less than $45,000. *Id.* However, if the selling price is to be greater than that amount, then the debtor's permitted exemption would be the same as he would receive under the California homestead statute. That is, the debtor would receive whatever was realized from the property's sale up to a maximum of $45,000.

Therefore, *Bregni's* reliance upon *Hyman* as support for its conclusion that post-petition appreciation accrues to the bankruptcy estate even when the property is legitimately claimed as exempt is misplaced. However, this is not to say that *Hyman* is not otherwise instructive, for the first part of that opinion addresses the debtors' separate argument that the bankruptcy trustee could not sell their home because he had not objected to the exemption claimed within the 30–day time period set by Rule 4003(b). Indeed, it is this portion of *Hyman* that the court in *Heflin* quoted as support for the conclusions it reached.

> The Hymans' schedule of exempt property listed "homestead" as an exemption under Cal.Civ.Pro.Code § 704.720, and valued the exemption at $45,000. Based on this information, the Hymans did not sufficiently notify others that they were claiming their entire homestead as exempt property; their schedule only gave notice that they claimed $45,000 as exempt, which is the proper amount of their homestead allowance under sections 704.720 and 704.730. Thus, the trustee had no basis for objecting, and could well have suffered the bankruptcy judge's ire had he objected to the $45,000 exemption to which the Hymens were clearly entitled.

*Heflin,* 215 B.R. at 534 (quoting *In re Hyman,* 967 F.2d at 1319) (citations omitted).

However, the court in *Heflin* failed to recognize a critical fact: that the debtors in *Hyman* admitted in their own schedules that the value of their home, even after deducting the liens, exceeded the $45,000 limit allowed them under the applicable homestead exemption they were claiming.[19]

---

**19.** Again, the Hymans set the value of their home at $415,000 and then listed liens and encumbrances against it as totaling $347,611. Consequently, the net equity disclosed by the

Hymans themselves was significantly more than the $45,000 homestead exemption permitted to them under California law.

As such, it was appropriate for the Ninth Circuit and the lower courts to conclude that the debtors, through their schedules:

"did not sufficiently notify others that they were claiming their entire homestead as exempt property; their schedule only gave notice that they claimed $45,000 as exempt, which is the proper amount of their homestead allowance under sections 704.720 and 704.730." *See, Reed,* 940 F.2d at 1321 n. 3.

*Hyman,* 967 F.2d at 1319.

*Schwaber v. Reed (In re Reed),* 940 F.2d 1317 (9th Cir.1991), is another case in which the Ninth Circuit addressed the question of post-petition appreciation of property claimed by the debtor as exempt under California's household statute. The debtor in *Reed* owned his home as a joint tenant with his non-filing spouse. The debtor disclosed in his schedules that the value of his one-half interest was $300,000 and that both his one-half interest and the other one-half interest owned by his wife were encumbered by liens in the amount of $380,000. The debtor claimed the $45,000 homestead exemption permitted under California law. The Ninth Circuit determined, as it did in *Hyman,* that the bankruptcy estate did have the right to sell the

debtor's undivided interest in the property and that the debtor was entitled to only $45,000 of the proceeds realized from that sale. The balance, including whatever was attributable to post-petition appreciation, belonged to the bankruptcy estate.

However, the Ninth Circuit ruled as it did in *Reed* only because there was value in the debtor's interest in excess of the $45,000 maximum permitted under the California homestead exemption. *Reed* is quite clear that the post-petition appreciation would have enured to the benefit of the debtor had the court concluded that the debtor was entitled to recover the undivided interest in his home as an in-kind exemption.

No doubt Debtor's argument that appreciation enured to him would have merit if his entire interest in the residence had been set aside or abandoned to him; it was not.

*Reed,* 940 F.2d at 1323.

Consequently, *Reed* is no more supportive of *Bregni* and *Heflin* than is *Hyman.*[20]

*In re Cross* well describes the competing interests Congress had to balance when it enacted the Bankruptcy Code.

---

The Hymans did argue separately that there was in fact no equity in the home because of the selling costs associated with liquidating it. However, as already discussed, the Ninth Circuit rejected this argument along with many of the other arguments made because of the peculiarities of the California homestead exemption claimed. *Hyman,* 967 F.2d at 1319–1320.

**20.** *Heflin* also cites *Alsberg v. Robertson (In re Alsberg),* 68 F.3d 312 (9th Cir.1995) as support for its proposition that a trustee may ignore the values ascribed to property claimed by a debtor as exempt so long as sometime later he is able to find a buyer willing to pay a sufficient sum to cover the stated value of the exemption. However, *Alsberg,* which is the Ninth Circuit's third effort

to address the nuances of California's homestead exemption, offers no more support than does *Hyman* or *Reed.* Granted, the trustee in *Alsberg* was permitted to later sell the debtor's home for a profit even though the debtor's schedules showed that there was no equity in the property. However, *Alsberg* simply reaffirmed *Hyman's* prior determination concerning the peculiar nature of the California homestead exemption. In other words, the exemption did not create an actual interest in the property but rather a right to receive proceeds from the sale. Consequently, the ultimate sales price realized from the trustee's sale was relevant. Moreover, *Alsberg* is distinguishable because the debtor did not even claim the homestead exemption until several months after the trustee's sale had closed.

"Bankruptcy is both a creditor's remedy and a debtor's right." *In re Marchiando,* 13 F.3d 1111, 1115 (7th Cir.1994). One consequence of this duality is that bankruptcy law is simultaneously pursuing two contradictory goals. On the one hand, it seeks to provide a distribution to creditors by liquidating the debtor's property. At the same time, however, it also seeks to give the debtor a "fresh start" through the bankruptcy discharge and by allowing the debtor to keep property from creditors through exemptions. *See, Burlingham v. Crouse,* 228 U.S. 459, 473, 33 S.Ct. 564, 568, 57 L.Ed. 920 (1913). These goals compete with one another so that as we try to increase the interests of one group we cannot avoid circumscribing the interests of the other. For example, by excepting debts from the scope of any discharge, we enhance the rights of some creditors and improve the likelihood that their debts will be paid; yet, by refusing to relieve the debtor of a portion of its debt, the value of its fresh start is diminished. Conversely, if we enhance the debtor's fresh start by allowing it to exempt more property, we undermine the interests of creditors by reducing the assets that can be liquidated to satisfy their claims. Because of this inherent tension between debtors and creditors, in crafting the current Bankruptcy Code, Congress necessarily confronted their competing interests and sought to balance them when it allocated the consequences of bankruptcy between debtors and creditors. Just how it did this is reflected throughout the Bankruptcy Code. It can be found in the sections identifying what becomes property of the bankruptcy estate and what is excluded from it, how the assets of the estate are distributed among creditors, the exemptions available to a debtor and the ways in which a debtor can deal with the property it has

exempted, the circumstances under which a debtor may receive a discharge and the nature of the debts that will survive discharge, as well as many more.

\* \* \* \* \* \*

Controlling the distribution of assets between a debtor and its creditors goes to the heart of the bankruptcy process.

*In re Cross,* 255 B.R. 25, 32–34 (Bankr. N.D.Ind.2000).

*Taylor* also recognized the tension caused by these competing interests. But *Taylor* recognized as well that it was Congress' role, not the judiciary's, to resolve the conflict. *Taylor* honored Congress by giving effect to what it had enacted through Section 522(*l*) and what it had adopted through FED.R.BANKR.P. 4003(b). Trustees and other parties in interest certainly are to have the opportunity to challenge whatever property the debtor might claim as exempt from the bankruptcy estate. However, *Taylor* recognizes without qualification that the burden is on the objecting party to speak quickly or forever hold his peace. Put simply, there can be no fresh start unless the debtor can be assured within a short period of time that the property he has claimed as exempt is free of subsequent efforts by the trustee to once again divest him of the same.

■ Moreover, the process that *Heflin, Bregni,* and *Einkorn* offer as a substitute for what Congress contemplated runs afoul of other provisions of the Bankruptcy Code and its attendant rules. It is the trustee who must object to an exemption claimed and it is the trustee who must bear the ultimate burden of proof with respect to that objection. FED.R.BANKR.P. 4003(B) AND (c). However, *Heflin* states that disputes regarding the in-kind exemption of property are to be resolved through the abandonment process and that the burden then lies with the debtor to show

that the property claimed as exempt should be abandoned because it "is of no value or benefit to the estate." *Heflin*, 215 B.R. at 535. *See also*, *Bregni*, 215 B.R. at 854. Moreover, to add insult to injury, the court in *Heflin* had observed earlier in its opinion that a debtor would have a particularly difficult time ever compelling the trustee to abandon the interest.

The United States Court of Appeals for the Sixth Circuit has set forth guidelines to be considered by bankruptcy courts when facing a motion to abandon. "An order compelling abandonment is the exception, not the rule." *See Morgan v. K.C. Machine & Tool Co. (In re K.C. Machine)*, 816 F.2d 238, 246 (6th Cir. 1987). Generally, "[a]bandonment should not be ordered where the benefit of administering the asset exceeds the cost of doing so." *Id.* Moreover, "[a]bsent an attempt by the trustee to churn property worthless to the estate just to increase fees, abandonment should very rarely be ordered." *Id.* In sum, the Sixth Circuit has concluded that "compelled abandonment is not available where administration promises a benefit to the estate." *Id.* at 247. *See also In re Pepper Ridge Blueberry Farms*, 33 B.R. 696, 698 (Bankr.W.D.Mich.1983)("Congress only intended the abandonment proceeding to be used where there is no question of facts or law involved and for a trustee or debtor in possession to hold assets for

no benefit to the estate would [sic] unconscionable."). *Heflin*, 215 B.R. at 532.[21]

■ It is patently unfair to subject the debtor to such a process. A debtor is under a duty to honestly prepare at the outset of the case schedules that set forth, among other things, the property of the estate he claims as exempt together with his opinion as to the value of that property. If the value (net of liens) given for the property is greater than the value of the exemption claimed, the property remains property of the estate. No objection by the trustee is necessary. The debtor, by his own admission, has acknowledged that there is value in the property that must be administered by the trustee for the benefit of creditors.

■ On the other hand, if the value (net of liens) in Schedule C given for the property is equal or less than the value of the exemptions claimed, then the trustee must presume that the debtor intends the exemption claimed to be taken in-kind. If a trustee believes that the debtor has understated the value of the property for purposes of claiming his exemption, then it is incumbent upon the trustee to file an objection or ask for an extension of time so that he can further investigate its value. At the very least, the trustee should confirm with the debtor that the debtor does not intend to keep the described property as an in-kind exemption but instead intends to accept its cash equivalent after

---

21. *Heflin* contends that it is not fair to force the trustee to ascertain the actual value of property claimed as exempt within the time frame imposed by Rule 4003(b). Rather, it ruled that "[t]he trustee has the discretion, for a reasonable time, to determine whether or not the estate will benefit from the sale of the property." *Heflin*, 215 B.R. at 536. Yet *Heflin* offers no indication as to what that reasonable time might be. Nor does *Heflin* court offer much hope that the debtor can force

that issue through a motion to abandon given *Heflin's* own pronouncements concerning the skepticism with which such motions are to be considered. Moreover, whatever unfairness there might be to requiring the trustee to file an objection within the 30–day period proscribed by FED.R.BANKR.P. 4003(b) can easily be alleviated through the trustee simply seeking an extension of the deadline as provided under that same rule.

the trustee has disposed of the same. The trustee cannot, as *Heflin, Bregni,* and *Einkorn* would have it, simply sit back and wait for the debtor to finally force the issue through the abandonment process.

▪ Returning now to the case before me, the specific question is whether the Chapter 7 Trustee's purported settlement with Defendants may be approved pursuant to FED.R.BANKR.P. 9019(a). Debtors indicated in their amended Schedule C that they intended to exempt from the bankruptcy estate the undivided one-half interest in the hunting property they had owned as of the commencement of their case. Moreover, Debtors indicated in their amended Schedule C that, in their opinion, the value of that interest was the same as the value they claimed as exempt. Therefore, the Chapter 7 Trustee at the very least was on notice that it was more likely than not that Debtors intended to keep their interest in the hunting property as an in-kind exemption. If she was unsure, she should have asked. Otherwise, the Chapter 7 Trustee was required either to file an objection to the exemption claimed by the November 3 deadline or to secure before that date an extension of that deadline so that she could further investigate the value of the property claimed as exempt. Since the Chapter 7 Trustee did not choose either of these options, the one-half undivided interest in the hunting property that Debtors apparently claimed as an in-kind exemption transferred from the estate and revested with Debtors as soon as the November 3 deadline passed. 11 U.S.C. § 522(*l*) and FED.R.BANKR.P. 4003(b). *See also, Taylor v. Freeland & Kronz,* 503 U.S. 638, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992).

▪ It follows then that the Chapter 7 Trustee's settlement with the owners of the other undivided one-half interest in the hunting property cannot be approved, for, as already discussed, that settlement contemplates the Chapter 7 Trustee conveying to those owners an interest in the hunting property that the bankruptcy estate in all likelihood no longer owns.[22] The bankruptcy estate's receipt of consideration from the Defendants under such circumstances would be tantamount to fraud and, therefore, would be in violation of the Chapter 7 Trustee's fiduciary duty to administer the bankruptcy estate in a lawful manner.[23] Consequently, the Chapter 7

---

**22.** A court is not required to actually try issues relevant to the matter being settled in determining whether that settlement is to be approved under FED.R.BANKR P. 9019(a). Again, the question presented in such a motion is whether the settlement contemplated by the trustee comports with his or her fiduciary duties. Therefore, I have only assumed that Debtors in fact intended to take an in-kind exemption of the hunting property when they filed their amended Schedule C. As already discussed, that amended schedule was certainly sufficient to manifest such an intent. Moreover, it is extremely unlikely that Debtors intended instead to have that property liquidated given how important such "hunting camps" are to Upper Peninsula families.

Nonetheless, there is at least the possibility that Debtors actually did not intend to take an in-kind exemption when they amended their schedules in 2004 and that it is now too late for them to change their minds under principles of either estoppel or laches. The Chapter 7 Trustee reserves the right to pursue such a theory if she chooses. However, the Chapter 7 Trustee has offered nothing for purposes of the motion now before me to dissuade me from the inference that Debtors had intended an in-kind exemption all along.

**23.** In arriving at this conclusion, I do not intend in any way to suggest that the Chapter 7 Trustee is attempting to defraud the Defendants. To the contrary, it appears that the Chapter 7 Trustee is acting in good faith based upon published decisions from both this district and the Eastern District of Michigan. However, the question put to me is not whether the Chapter 7 Trustee has acted in good faith or not but whether the transaction,

Trustee's motion to approve the settlement must be denied.

### CONCLUSION

Therefore, for the reasons stated, the Chapter 7 Trustee's motion to approve the settlement she has reached with Defendants is denied. The court will prepare a separate order consistent with this opinion.

if consummated, would be lawful. FED. R.BANKR.P. 9019(a) offers a bankruptcy trustee the opportunity few other parties enjoy: the ability to have a court review the propriety of his or her decision before assuming the consequences of that decision. However, that opportunity comes at the price of being told from time to time that the transaction is inappropriate regardless of the trustee's otherwise good intentions.