**In re Loren J. BROWN, Debtor.**

**No. HM 05–90399.**

United States Bankruptcy Court, W.D. Michigan.

Sept. 5, 2007.

Robert D. Heikkinen, Esq., Marquette, MI, attorney for the Debtor.

A. Brooks Darling, Esq., Traverse City, MI, attorney for the Chapter 7 Trustee.

*OPINION RE: TRUSTEE'S DECEM-*
*BER 20, 2006 OBJECTION TO*
*EXEMPTIONS*

JEFFREY R. HUGHES, Bankruptcy Judge.

Loren J. Brown ("Debtor") filed a petition for relief under Chapter 13 of the Bankruptcy Code[1] on May 9, 2005. Debtor's schedules indicate that he owned a fee simple interest in his McMillan, Michigan home immediately preceding the commencement of his case. That interest, of course, became property of the estate pursuant to Section 541(a)(1).

Debtor has claimed as exempt a portion of the bankruptcy estate's interest in the McMillan residence. Debtor's first attempt to claim this exemption is set forth in the Schedule C he filed on the same date as his petition.[2] That schedule, when read in conjunction with Schedules A and D filed on the same date, indicates: 1) that, in Debtor's opinion, the bankruptcy estate's net equity in the McMillan residence was $50,400.00; 2) that Debtor was electing the state scheme of exemptions as permitted by Section 522(b)(2)(B) (pre-BAPCPA); 3) that Debtor claimed an exemption based upon MICH. COMP. LAWS § 600.6023a(1)(n); and 4) that the value of the exemption claimed was $30,000.00.

Debtor then amended his Schedule C on June 21, 2005. His amended Schedule C also claimed the McMillan residence as exempt under state law and continued to set the bankruptcy estate's net equity in the residence at $50,400.00. However, Debtor changed the exemption claimed to MICH. COMP. LAWS § 600.5451(1)(n). He also increased the amount of the claimed exemption to $45,000.00.

Neither the Chapter 13 trustee nor any other party in interest objected to the exemption originally claimed by Debtor or to the amended exemption. Debtor's Chapter 13 plan was then confirmed without objection at a hearing held on July 19, 2005.

Debtor performed under his confirmed plan until September 15, 2006, when Debtor himself elected to convert the case to a Chapter 7 proceeding. Conversion of the case prompted both the appointment of a Chapter 7 trustee to replace the Chapter 13 trustee and the scheduling of a new meeting of creditors under Section 341(a).[3] This "second" meeting of creditors was originally set for November 17, 2006, but was then rescheduled for December 13, 2006.[4]

---

1. 11 U.S.C. §§ 101, *et seq.* Debtor's petition pre-dates the October 17, 2005 effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Pub.L. No. 109–8, § 1501(B)(1), 119 Stat. 23. Unless otherwise indicated, all citations in this opinion to the Bankruptcy Code will be to the Bankruptcy Code as written prior to the BAPCPA amendments. The citation will be simply "Section____" if the amendments have not changed the enumeration. However, if the enumeration has been changed, then the citation will be "Section____(pre–BAPCPA)."

2. Section 521 and FED.R.BANKR.P. 1007 require a debtor at the outset of the case to file schedules concerning his assets and liabilities. Schedule C is the schedule used to identify the property the debtor intends to claim as exempt. FED R.BANKR.P. 4003(a).

3. The United States Trustee is required to convene a meeting of creditors "[w]ithin a reasonable time after the order for relief in a case...." 11 U.S.C. § 341(a). Conversion of the case constitutes a new order for relief under that chapter. 11 U.S.C. § 348(a). Therefore, another meeting of creditors was necessary.

4. The "first" meeting of creditors in the Chapter 13 case had been scheduled for June 15, 2005 but was adjourned to July 6, 2005. The court's records do not indicate whether that meeting concluded on July 6, 2005 or whether it was adjourned again.

The Chapter 7 trustee filed her objection to Debtor's claimed exemption in the McMillan residence on December 20, 2006. Her objection challenges the constitutionality of MICH. COMP. LAWS § 600.5451(1)(n), that being the state statute Debtor currently relies upon to claim his exemption. She cites as support *In re Wallace*, 347 B.R. 626 (Bankr.W.D.Mich.2006).[5]

Debtor has not contested the substance of the Chapter 7 trustee's objection.[6] However, Debtor does contend that the Chapter 7 trustee's objection is untimely. Debtor relies upon Rule 4003(b) of the Federal Rules of Bankruptcy Procedure.[7]

> A party in interest may file an objection to the list of property claimed as exempt only within 30 days after the meeting of creditors held under § 341(a) is concluded ...

FED.R.BANKR.P. 4003(b).

Debtor argues that the meeting of creditors referenced in this rule is the meeting of creditors that was previously held during the Chapter 13 proceeding and that, therefore, the Chapter 7 Trustee is time-barred from now filing an objection. The Chapter 7 Trustee, on the other hand, contends that another opportunity arose to object to Debtor's claimed exemptions when the subsequent meeting of creditors was scheduled upon conversion of the case to Chapter 7 and that, therefore, her objection is timely.[8]

## DISCUSSION

■ The courts have gone back and forth for years as to whether a trustee or other party in interest in a converted Chapter 7 case may have a second opportunity to object to exemptions already claimed by the debtor in either a previous Chapter 11 or Chapter 13 case.[9] Although the division between the two camps is roughly equal, their respective positions have nonetheless been described as majority and minority views.

> Under one line of cases, designated as a "minority rule," the thirty-day period to object to a debtor's claimed exemptions recommences when a Chapter 13 case is converted to Chapter 7. Courts adopting

---

5. MICH. COMP. LAWS § 600.5451 provides a debtor a whole array of exemptions. However, those exemptions are available only in instances where the debtor has sought relief under the Bankruptcy Code.

> A debtor in bankruptcy under the bankruptcy code, 11 USC 101 to 1330, may exempt from property of the estate property that is exempt under federal law, or under 11 USC 522(b)(2), the following property:
>
> * * *

MICH COMP. LAWS § 600.5451(1).

I determined in *Wallace* that the Michigan legislature could not limit the exemptions it had created to only instances involving bankruptcy proceedings without also violating the Supremacy Clause of the United States Constitution.

6. *See, e.g.,* Debtor's December 21, 2006 Response (Dkt. # 26).

7. FED R.BANKR.P. 1001–9036. Unless otherwise indicated, all further citations in this opinion to "Rule_____" will be to the Federal Rules of Bankruptcy Procedure.

8. Both parties seem to concede that the initial meeting of creditors held in conjunction with Debtor's prior Chapter 13 had in fact concluded and that the subsequent meeting of creditors held in the converted Chapter 7 concluded on December 13, 2006. However, as previously noted, the record is unclear as to whether the "first" meeting of creditors ever concluded and the record is also unclear whether the "second" meeting of creditors was properly adjourned from its originally scheduled date of November 16, 2006. These uncertainties, though, have no bearing on my decision. Therefore, I have simply accepted what the parties appear to concede as true.

9. Although the issue could also arise in a converted Chapter 12 case, conversions from Chapter 12 to Chapter 7 are relatively rare.

this minority rule state it is supported by relevant Bankruptcy Code and Bankruptcy Rule provisions. In particular, under § 348(a), the conversion of a Chapter 13 to Chapter 7 "constitutes an order for relief under the chapter to which the case is converted, but ... does not effect a change in the date of the ... order for relief." Because the conversion of a Chapter 13 case to Chapter 7 constitutes an order for relief, a new meeting of creditors must be called in the converted Chapter 7 case pursuant to § 341(a) and Federal Rule of Bankruptcy Procedure 2003(a). The objection period set forth in Bankruptcy Rule 4003(b) runs within thirty days after the "meeting of creditors held under § 341(a) is concluded. . . ." Given that there is nothing in Bankruptcy Rule 4003(b) limiting the "meeting of creditors" to the initial meeting of creditors in the Chapter 13 case, courts adopting the minority view hold that parties in interest have thirty days from the conclusion of the meeting of creditors called in the converted Chapter 7 case to object to a debtor's claimed exemption. Under this view, exemptions claimed by a debtor in his or her Chapter 13 case may be objected to within thirty days of the conclusion of the meeting of creditors in the Chapter 13 case, or within thirty days of the conclusion of the meeting of creditors in the converted Chapter 7 case. Courts adhering to the minority view also support it with policy and fairness considerations.

The other line of cases, designated as the "majority view," holds that the thirty-day objection period in Bankruptcy Rule 4003(b) does not commence anew upon the conversion of a Chapter 13 case to Chapter 7. The majority view is based in part on Bankruptcy Rule 1019(2), which states, in relevant part, that: "A new time period for filing claims, a complaint objecting to discharge, or a complaint to obtain a determination of dischargeability of any debt shall commence pursuant to Rules 3002, 4004, or 4007. . . ." Because the thirty-day objection period in Bankruptcy Rule 4003(b) is not mentioned in Bankruptcy Rule 1019(2), courts adopting the majority view hold that it may not be reset upon the conversion of a case. The refusal of some courts to recommence the thirty-day period in Bankruptcy Rule 4003(b) is also based in part on the fact that § 348(a) states that conversion of a case does not change the date of the order for relief and, therefore, all deadlines, such as the exemption objection deadline, should not be affected by conversion. Additionally, some courts reason that to allow a new objection period upon conversion is not compatible with § 522(*l*) because, under that section, the property in the preconverted case is exempt and it cannot be brought back into the estate. Finally, courts adhering to the majority view point to the importance of finality in exemption matters articulated in *Taylor [v. Freeland & Kronz*, 503 U.S. 638, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992)].

*In re Campbell*, 313 B.R. 313, 318–19 (10th Cir. BAP 2004) (footnotes omitted).

*In re Page*, 240 B.R. 548, 551 (Bankr. W.D.Mich.1999), adopts the majority view.

Although the cases are not unanimous, the better reasoned decisions hold that the 30–day period for objecting to exemptions commences at the conclusion of the "first" first meeting of creditors, and not at the conclusion of any subsequent meetings that may be held as a consequence of a conversion of the case from one chapter to another. Therefore, the convening of a subsequent meeting of creditors following the conversion of the Debtor's case from chap-

ter 13 to chapter 11 did not trigger a new 30–day period for objecting to exemptions.

*See also, In re Brown,* 178 B.R. 722 (Bankr.E.D.Tenn.1995); *In re Halbert,* 146 B.R. 185 (Bankr.W.D.Tex.1992).

However, I agree with the minority's interpretation.[10] Granted, Rule 4003(b)'s drafters could have been more specific in expressing their intention to permit further objections to exemptions already claimed whenever a case is converted. There is also no question that adopting the minority view presents issues regarding the administration of property that the debtor may have claimed as exempt months or even years before. Nonetheless, the unambiguous language of Rule 4003(b) itself allows for only one construction: that the conversion of a case and the attendant scheduling of another meeting of creditors gives the trustee and other parties in interest a new opportunity to object to the exemptions claimed.

> [T]he only reasonable construction of § [sic] 4003(b) is to allow the language to convey its plain meaning and to permit the Chapter 7 Trustee an opportunity to object to the claimed exemptions, provided that the Trustee files the objection within thirty (30) days after the § 341 meeting following conversion.

*Weissman v. Carr (In re Weissman)* 173 B.R. 235, 237 (M.D.Fla.1994) (footnote omitted). *See also, In re Mims,* 249 B.R. 378 (Bankr.D.N.J.2000).

The majority, though, contends that Rule 4003(b) is still subject to interpreta-

tion because of conflicting language in Rule 1019(2).

When a chapter 11, chapter 12 or chapter 13 has been converted or reconverted to a chapter 7 case:

\* \* \*

> (2) New Filing Periods. A new time period for filing claims, a complaint objecting to discharge, or a complaint to obtain a determination of dischargeability of any debt shall commence pursuant to Rules 3002, 4004, or 4007, provided that a new time period shall not commence if a chapter 7 case had been converted to a chapter 11, 12, or 13 case and thereafter reconverted to a chapter 7 case and the time for filing claims, a complaint objecting to discharge, or a complaint to obtain a determination of the dischargeability of any debt, or any extension thereof, expired in the original chapter 7 case.

FED.R.BANKR.P. 1019(2).

The majority's argument is that "meeting of creditors" as used in Rules 3002, 4003, 4004, and 4007 means only the initial meeting of creditors held whenever the conversion of the case requires another meeting of creditors and that it is only through Rule 1019(2) that a party is given an opportunity, for example, to object post-conversion to the non-dischargeability of a claim under Rule 4007. The majority then deduces that a trustee or other party in interest cannot object to an exemption previously claimed in conjunction with the converted case because Rule 1019(2) makes no reference to either objections to

---

**10.** My colleague, the Hon. James D. Gregg, authored *Page.* However, in a recent bench opinion, Judge Gregg stated that due process concerns have caused him to now question the majority view. Unpaid creditors in a Chapter 11, 12, or 13 case whose claims arose post-petition and who are not entitled to administrative priority are to be treated as if they were pre-petition creditors in the event the case is converted to Chapter 7. 11 U.S.C. § 348(d). Judge Gregg's reservation is that the majority interpretation of Rule 4003(b) denies such creditors the opportunity to object to pre-conversion exemptions claimed by the debtor.

exemptions or Rule 4003(b). In other words, only Rule 4003(b) can be relied upon for determining when an objection to an exemption may be made in a converted case and, according to the majority, the meeting of creditors referenced in that rule is only the initial meeting held prior to the case's conversion.

However, such reasoning is problematic, for Rule 1019 is asymmetric. That is, while Rule 1019 applies to cases converted from Chapters 11, 12 or 13 to Chapter 7, the opposite is not true. Suppose, then, that a creditor who failed to file a proof of claim in the debtor's original Chapter 7 later files its claim after the debtor converts his case to Chapter 13. Would that claim be tardy? The plain language of Rule 3002(c) certainly suggests that the claim would be allowed provided that it was filed within thirty (30) days of the scheduling of the "second" meeting of creditors required in conjunction with the converted Chapter 13.

### (c) Time for filing

In a chapter 7 liquidation, chapter 12 family farmer's debt adjustment, or chapter 13 individual's debt adjustment case, a proof of claim is timely filed if it is filed not later than 90 days after the first date set for the meeting of creditors called under § 341(a) of the Code, except as follows:

* * *

FED.R.BANKR.P. 3002(c).

Moreover, Rule 1019(2) could not be used in that instance to promote a different interpretation since that rule clearly does not apply with respect to a conversion of this type.

Similarly, a Chapter 13 trustee in a converted case would not be barred from raising his own objection to an exemption claimed by the debtor in his prior Chapter 7. Again, the plain language of Rule 4003(b) indicates that the scheduling of another meeting of creditors in the converted case would permit the Chapter 13 trustee to proceed with her objection and Rule 1019(2) would likewise be unavailable as an interpretative tool. However, if, as the majority insists, "meeting of creditors" in Rule 4003(b) means only the initial meeting of creditors when Rule 1019(2) applies, it is confronted with the difficulty of explaining what that same phrase means in converted cases when Rule 1019(2) does not apply. Its choices are either to persist with the same interpretation even though Rule 4003(b), when read without the aid of Rule 1019(2), clearly does not convey that meaning, or to take the inconsistent position that "meeting of creditors" means one thing when Rule 1019(2) applies but that it means something else when that rule does not apply.[11]

---

**11.** The majority also relies upon Section 348(a) as support for its contrary interpretation of Rule 4003(b). However, that argument is easily addressed:

> Additionally, we are not compelled by the majority view's analysis of § 348(a) *as it relates to Bankruptcy Rule 4003(b)*. We recognize, as do the courts adopting the majority view, that § 348(a) expressly states that the date of the order for relief is not altered by the conversion of a case, and that the purpose of that provision "is to preserve actions already taken in the case before

conversion." But, the deadline in Bankruptcy Rule 4003(b) is not based on the date of the order for relief. It is based on the conclusion of a "meeting of creditors." This difference is real, and should not be ignored. If the drafters of Bankruptcy Rule 4003(b) wanted to limit the time to file objections to claimed exemptions based on the date of an order for relief, they would have expressly stated so.

*In re Campbell*, 313 B.R. at 320 (10th Cir. BAP 2004) (emphasis in original) (footnote omitted).

Frankly, the interplay between Rule 4003(b) and Rule 1019(2) remains a mystery. Perhaps the drafters' intention was exactly as the majority has suggested. However, it is just as likely that the drafters simply did not consider it. Or perhaps, as the court in *Havanec* has speculated: ·

> [T]he draftsmen of Rule 1019(2) might well have concluded that the language of Rule 4003(b) was sufficiently clear to assure that the trustee could object to claims following the conclusion of the chapter 7 creditors meeting after the case had been converted.

*In re Havanec*, 175 B.R. 920, 924 (Bankr. N.D.Ohio 1994).[12] What is clear, though, is that Rule 1019(2) is not, as the majority would have it, the Rosetta stone. Consequently, I am not persuaded by the majority's insistence that Rule 4003(b) is to be given an interpretation that is inconsistent with the words actually used in that rule,

especially in light of the Supreme Court's admonitions in *Lamie v. U.S. Trustee:*

> It is well established that "when the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms."

540 U.S. 526, 534, 124 S.Ct. 1023, 1030, 157 L.Ed.2d 1024 (2004).[13]

Therefore, I conclude that Rule 4003(b) must be interpreted to include a new opportunity to file an objection to exemptions whenever a new meeting of creditors is scheduled as a consequence of a case's conversion from one chapter to another.

Unfortunately, courts adopting the minority view have for the most part simply declared that the conversion of a case gives the subsequent trustee another opportunity to object to exemptions already claimed. What is lacking in those opinions is any explanation as to how other aspects

---

**12.** Rule 1017(e) also tarnishes Rule 1019(2) as an interpretative tool. Rule 1017(e)(1) addresses when a motion to dismiss under Section 707(b) must be filed and, like Rules 3002(c), 4003(b), 4004(a) and 4007(b), Rule 1017(e)(1) measures that deadline based upon the Section 341 meeting of creditors. Indeed, Rule 1017(e)(1) uses the very same language as used in Rules 3002(c), 4004(a) and 4007(b).

> A motion to dismiss a case for substantial abuse may be filed by the United States trustee only within 60 days after the first date set for the meeting of creditors under § 341(a), unless, on request filed by the United States trustee before the time has expired, the court for cause extends the time for filing the motion to dismiss.

FED.R.BANKR P. 1017(e)(1).

Rule 1019(2) also omits any reference to Section 707(b) motions and Rule 1017. Consequently, the majority, in order to be true to its reasoning, would necessarily have to conclude that no Section 707(b) motion to dismiss in a converted Chapter 7 may be filed if the deadline in the prior chapter has already passed. However, reaching such a conclusion is absurd, given that Section 707(b) mo-

tions are relevant only in the context of a Chapter 7 case.

I am also not persuaded that proposed Interim Rule 1019, even if ultimately adopted, offers any more insight as to how Rule 4003(b) is to be interpreted. Granted, the proposed rule's inclusion of 707(b) motions and Rule 1017, coupled with its continued exclusion of objections to exemptions and Rule 4003, would give some weight to the majority's argument should the rule be ultimately adopted. However, "weight" is the operative word, especially in light of the fact that the inconsistency I have identified as arising because of the asymmetrical application of Rule 1019(2) to only cases converted from Chapters 11, 12 and 13 to Chapter 7 still exists and the fact that the plain language of Rule 4003(b) still suggests a contrary result.

**13.** *Lamie*, of course, involved the interpretation of the Bankruptcy Code as opposed to a bankruptcy rule. However, a bankruptcy rule is of equal legal effect once it is adopted by Congress. *In re Fuller*, 255 B.R. 300, 305 (Bankr.W.D.Mich.2000). *See also*, 28 U.S.C. § 2075.

of the bankruptcy estate's administration might affect such belated objections. It is ironic, then, that the explanation absent in these cases is found instead in majority view cases such as *Brown, Halbert* and *Page.*

 The exemption process is complex enough without the added confusion of a case conversion. Therefore, it is helpful to first understand how exemptions are administered without this wrinkle. That understanding begins with the recognition that all of the debtor's interests in property, including whatever interests the debtor may ultimately keep as exempt, become property of the estate upon the commencement of the debtor's case. 11 U.S.C. § 541(a)(1). *See also, Liberty State Bank and Trust v. Grosslight (In re Grosslight),* 757 F.2d 773, 775 (6th Cir.1985).[14] Section 522(b)(1) then empowers the debtor to choose from whatever has become property of the estate those interests the debtor is allowed under the bankruptcy laws to exempt, or "set aside," [15] for himself.

Notwithstanding section 541 of this title, an individual debtor may exempt from property of the estate the property list-ed in either paragraph (2) or, in the alternative, paragraph (3) of this subsection.

11 U.S.C. § 522(b)(1).

 The Chapter 7 trustee and creditors, of course, may object to what the debtor has claimed as his exempt property. However, if the exemption claimed is unchallenged, or if whatever objection made is overruled, the property selected as exempt ceases to be property of the estate by operation of Section 522(*l*). *Taylor v. Freeland & Kronz,* 503 U.S. 638, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992).[16] *See also, Owen v. Owen,* 500 U.S. 305, 308, 111 S.Ct. 1833, 1835, 114 L.Ed.2d 350 (1991) (Court observing that "[a]n exemption is an interest withdrawn from the estate (and hence from the creditors) for the benefit of the debtor."). Moreover, whatever the debtor recovers from the bankruptcy estate as exempt property is thereafter protected for the most part from the claims of the debtor's pre-petition creditors. 11 U.S.C. § 522(c).[17]

Exempting property from the bankruptcy estate is in some ways like shopping at a warehouse outlet. For example, the

---

14. In contrast, the former Bankruptcy Act treated the debtor's exempt property as remaining outside of the bankruptcy estate from the outset of the case. *Id.*

15. Websters Ninth New Collegiate Dictionary (1989).

16. *Taylor* is most often cited for the proposition that the objection period set by Rule 4003(b) is to be strictly enforced. However, *Taylor* in fact turned on whether money that the debtor's attorneys had received post-petition from a settlement that the debtor had claimed as exempt was property of the estate or not. The court determined that the settlement had been removed from the bankruptcy estate by operation of Section 522(*l*) when the Rule 4003(b) deadline passed without a timely objection having been filed. Therefore, it followed that the trustee no longer had the authority to recover the amount transferred to the debtor's attorneys as estate property under Section 542. *See also, In re Anderson,* 357 B.R. 452 (Bankr.W.D.Mich.2006).

17. Section 522(c) provides in part that:

Unless the case is dismissed, property exempted under this section is not liable during or after the case for any debt of the debtor that arose, or that is determined under section 502 of this title as if such debt had arisen, before the commencement of the case, . . .

11 U.S.C. § 522(c).

The remainder of Section 522(c) then describes various exceptions to the protection afforded. For example, the exempted property is not protected from a pre-petition debt that is secured by a lien in that property provided that the lien has not been otherwise avoided. 11 U.S.C. § 522(c)(2).

debtor might want to purchase (*i.e.*, exempt) his car from the warehouse (*i.e.*, bankruptcy estate). If the trustee refuses to accept the exemption tendered and the court agrees, then the car stays in the warehouse. On the other hand, if the trustee accepts the tender, or if the trustee refuses but the court compels acceptance, then the debtor is allowed to drive the car home.

The exemption process, though, is not always so simple. For example, the debtor himself may acknowledge in his Schedule C that the car he would like to exempt is worth more than the $3,225 he is permitted to expend under Section 522(d)(1) as his exemption.[18] If that were to occur, the car would remain as property of the estate notwithstanding the debtor's allowable exemption so that the bankruptcy trustee might still realize for the benefit of the bankruptcy estate's creditors the vehicle's acknowledged non-exempt value. In other words, Section 522(*l*) would not operate to remove the car from the bankruptcy estate in this hypothetical because Section 522(*l*)

applies only when "the property claimed as exempt" itself is to be removed and in this hypothetical the debtor himself has agreed that he is not entitled to the actual vehicle, but instead is entitled to only a portion of what the vehicle is actually worth.[19]

As for the trustee's ultimate disposition of the car, one of several paths might be taken. First, the trustee and the debtor might reach an agreement whereby the trustee would sell the car to the debtor for, say, $4,500 under Section 363(b) and then deduct from the purchase price the debtor's allowed Section 522(d)(2) exemption. The trustee might also sell the car to a third party and then account to the debtor for his $3,225 share of the proceeds. Or, finally the trustee might decide at some point that the non-exempt equity acknowledged by the debtor is not worth the cost of administration and, as a consequence, elect to abandon the car pursuant to 11 U.S.C. § 554.[20]

■ What effect, then, does a conversion from one case to another have on this

---

18. The debtor, of course, could exempt the remaining value of the car through the Section 522(d)(5) "catch all" exemption. However, for purposes of this hypothetical, I am assuming that the debtor has chosen to use his entire Section 522(d)(5) exemption to remove other property from the estate.

19. It is easy to slip into referring to the property exempted as the *res* itself as opposed to only the debtor's interest in the *res* and, indeed, the two concepts are interchangeable when, as in the hypothetical here, the debtor was the sole owner of the vehicle pre-petition and the vehicle is unencumbered. However, it is more accurate to limit both what constitutes property of the estate and what is then exempted from the estate to just the debtor's interest in the *res*. For example, if the debtor owned only an undivided interest in Blackacre, then only that undivided interest would become property of the estate and only that undivided interest would be removed from the estate if successfully claimed as exempt. Similarly, only the debtor's equity in Black-

acre that would become property of the estate if Blackacre was subject to a mortgage as of the commencement of the case and it would only be that equity interest that would be removed from the estate if Debtor was ultimately successful in claiming Blackacre as exempt. *See also, In re Talbert*, 268 B.R. 811, 819 (Bankr.W.D.Mich.2001).

20. Chapter 11 and Chapter 13 add a further wrinkle by giving the debtor other ways of regaining control of property claimed as exempt where the acknowledged value of the property is in excess of the exemption allowed. The most obvious is through the confirmation process itself. For example, a Chapter 13 debtor can keep property with non-exempt equity as part of his plan provided that the distribution to unsecured creditors under the plan takes account of that equity. 11 U.S.C. § 1325(a)(4). *See also, In re Raynard*, 333 B.R. 389, 392 n. 10 (Bankr. W.D.Mich.2005) *rev'd on other grounds*, 354 B.R. 834 (6th Cir. BAP 2006).

basic process? Consider a few more hypotheticals. Assume again that the case was originally filed as a Chapter 7 (*i.e.*, it has not been converted from another chapter) but this time assume that the bankruptcy estate includes two unencumbered automobiles, a Honda and a Chevrolet, and that each is worth $3,225.00. Now assume that the debtor chooses to list the Chevrolet in his Schedule C as an in-kind Section 522(d)(2) exemption. That is, the debtor decides that he wants to keep the Chevrolet for himself rather than to have the trustee sell the Chevrolet and give him the lesser of $3,225 or the net proceeds realized. The trustee and any other party in interest would have until 30 days after the conclusion of the first meeting of creditors to object to the exemption. If a timely objection were to be filed, then the Chevrolet would continue to be held by the bankruptcy estate at least until the objection was resolved.[21] However, it is unlikely that any objection would be filed in this instance because the value of the Chevrolet and the exemption claimed are assumed to be equal. Therefore, the Chevrolet would automatically revest in the debtor by operation of Section 522(*l*) as soon as the Rule 4003(b) deadline had passed and Section 522(c) would thereafter protect the Chevrolet from the debtor's pre-petition creditors.

If, at some later date, the Chapter 7 trustee in this hypothetical were to change his mind about the Chevrolet (*e.g.*, he later determined that the Chevrolet was worth $5,000.00, not $3,225.00), he would clearly be time-barred by Rule 4003(b) from then pursuing his objection to the debtor's prior in-kind exemption of that vehicle. *Taylor,*

503 U.S. at 642, 112 S.Ct. 1644. *See also, In re Anderson,* 357 B.R. 452, 460 (Bankr. W.D.Mich.2006). However, what would be the outcome if instead it was the debtor who changed his mind (*e.g.*, he later decided that the Honda would run longer)? Could the debtor substitute the Honda for the Chevrolet?

Rule 1009(a) allows the debtor to amend a schedule as a matter of course at any time before the case is closed. Consequently, the debtor would certainly be within his rights to amend his Schedule C at a later date to change his claimed exemption from the Chevrolet to the Honda. However, Rule 4003(b) also permits the trustee a new opportunity to object whenever the debtor makes such an amendment. Therefore, the Chapter 7 trustee would also be entitled to object to the amendment on the basis that the debtor had already used his Section 522(d)(2) exemption with respect to the Chevrolet and that the Chevrolet was no longer even part of the bankruptcy estate because of Section 522(*l*).

However, debtors can be quite resourceful. What if, then, this debtor parried the trustee's objection with an offer to tender the Chevrolet back to the estate? Could the debtor compel the trustee to accept the return of the Chevrolet?

■ The answer is clearly no. The debtor in this hypothetical would be no less subject to the finality of Section 522(*l*) and Rule 4003(b) than was the trustee in *Taylor.* Remember, the underlying question in *Taylor* was whether the trustee could recover from the debtor's attorneys

---

**21.** Section 522(*l*) could be literally read to remove exempted property from the bankruptcy estate only in those instances where no objection has been made at all. ("Unless a party in interest objects, the property claimed as exempt on such list is exempt."). Nonethe-

less, I interpret Section 522(*l*) as covering not only those instances where no objection has been made to the claimed exemption but also those instances where an objection has been made but the debtor has ultimately prevailed.

property that was no longer property of the estate by operation of Section 522(*l*). If Section 522(*l*) and Rule 4003(b) barred the *Taylor* trustee from later recovering that property, it stands to reason that the debtor's attorneys in that case would have been similarly barred from unilaterally tendering that property back to the estate were they in turn ever so inclined.[22]

Moreover, the outcome would be no different if the hypothetical arose instead in a converted Chapter 7. For example, assume that the debtor had claimed without objection his Section 522(d)(2) exemption in the Chevrolet prior to confirmation of a Chapter 13 plan and that he did not change his mind regarding that exemption until after his plan had failed and the case had converted to Chapter 7. The debtor would still be able to amend his Schedule C to claim the Honda as exempt and the Chapter 7 trustee would still be able to file his objection to that amendment. However, more to the point, the intervening conversion would have had no effect upon Section 522(*l*)'s prior removal of the Chevrolet from the bankruptcy estate through debtor's successful exemption of that vehicle during the Chapter 13 proceeding. Consequently, the debtor could no more compel the Chapter 7 trustee to accept the return of the Chevrolet in a converted case than could he compel the Chapter 7 trustee to accept its return in an unconverted case.

In *In re Wolf,* 244 B.R. 754 (Bankr. E.D.Mich.2000), the court concluded that "the rather technical arguments about when property was or is property of the estate" should not interfere with what that court considered to be Rule 4003(b)'s unambiguous provisions. *Id.* at 760. However, with all due respect, issues involving property of the estate, whether technical or not, cannot be so easily brushed aside. After all, much of the bankruptcy process, especially in the context of a Chapter 7 proceeding, is about the division of property between the bankruptcy estate, the debtor and third parties.[23] As the hypo-

---

**22.** *Brown,* 178 B.R. 722, and other cases espousing the majority point of view argue that the finality that the Court in *Taylor* deemed so important would be undermined if Rule 4003(b) is interpreted as providing a second or even third opportunity for objections to exemptions to be made. This concern, though, is valid only if one assumes that the property claimed as exempt must remain as property of the estate until all opportunities to object have been exhausted. However, Section 522(*l*) as well as the case law are quite clear that property is removed from the bankruptcy estate as exempt as soon as no objection to the exemption is made. Consequently, a debtor's in-kind exemption of his interest in his home in conjunction with a Chapter 13 proceeding, if unopposed, would cause that interest to transfer back to him from the bankruptcy estate by operation of Section 522(*l*). While a subsequent Chapter 7 trustee would in theory have a second opportunity to object to the exemptions the debtor had previously claimed were the case later converted to a Chapter 7, the Chapter 7 trustee would not be able to actually take advantage of that opportunity because of the debtor's already successful exemption of that interest prior to the case being converted.

Indeed, to interpret Section 522(*l*) otherwise would lead to no property claimed as exempt ever being removed from the estate by operation of Section 522(*l*) prior to the case being closed, for the possibility of the case converting to another chapter always exists. For example, Section 706(a) permits a debtor in most instances to convert his case to Chapter 11, 12 or 13 at anytime. Consequently, if Section 522(*l*) is to have any meaning, it must be interpreted as causing the removal of property claimed as exempt as soon as the first opportunity to object has passed even though a second opportunity to object under Rule 4003(b) would arise if the case were ever to convert to another chapter.

**23.** "Bankruptcy is both a creditor's remedy and a debtor's right." *In re Marchiando,* 13 F.3d 1111, 1115 (7th Cir.1994). One consequence of this duality is that bankruptcy law is simultaneously pursuing two contradictory goals. On the one hand, it seeks to provide a

theticals just discussed illustrate, a property's status vis-a-vis the bankruptcy estate can be crucial to deciding the outcome of a dispute.

Of course, this is not to say that Rule 4003(b) does not also have a role to play whenever the issue involved is the claimed exemption of that property. .However, Rule 4003(b) does not stand by itself. Rather, it functions subject to the constraints imposed upon it by other aspects of the overall bankruptcy process. For example, due consideration must be given to whether the property targeted as exempt even remains in the bankruptcy estate. Think of property status as being like gravity and Rule 4003(b) as being a road sign. Both a road sign and Rule 4003(b) give direction. However, as helpful as a road sign may be, the traveler must still give heed to the inconvenience of gravity, especially when the road sign leads to the edge of a cliff. The same deference must be given to the status of property vis-a-vis the bankruptcy estate when seeking guidance from Rule 4003(b).

The court in *Brown*, in fact, made this very point when it challenged the soundness of the minority's interpretation of Rule 4003(b).

Therefore, unless there is some mechanism for the debtor's property to reenter the bankruptcy estate upon conversion, it would seem that exemptions in the Chapter 11, once considered final and unobjectionable under the rule in *Taylor*, must be considered final and unobjectionable in the converted case as well.

Because all the viewpoint cases are subsequent to *Halbert*, and because *Halbert* directly makes this argument, it is interesting that none of the viewpoint cases attempt to answer it, even if they cite *Halbert* as a contrary case. **They seem to assume that something in the conversion process must adjust things so their preferred outcome can obtain, but they do not state what that something is or how it might operate within the Code.**

*In re Brown*, 178 B.R. 722, 727 (Bankr. E.D.Tenn.1995) (emphasis added). Where

distribution to creditors by liquidating the debtor's property. At the same time, however, it also seeks to give the debtor a "fresh start" through the bankruptcy discharge and by allowing the debtor to keep property from creditors through exemptions. *See Burlingham v. Crouse*, 228 U.S. 459, 473, 33 S.Ct. 564, 568, 57 L.Ed. 920 (1913). These goals compete with one another so that as we try to increase the interests of one group we cannot avoid circumscribing the interests of the other. For example, by excepting debts from the scope of any discharge, we enhance the rights of some creditors and improve the likelihood that their debts will be paid; yet, by refusing to relieve the debtor of a portion of its debt, the value of its fresh start is diminished. Conversely, if we enhance the debtor's fresh start by allowing it to exempt more property, we undermine the interests of creditors by reducing the assets that can be liquidated to satisfy their claims. Because of this inherent tension between debtors and creditors, in

crafting the current Bankruptcy Code, Congress necessarily confronted their competing interests and sought to balance them when it allocated the consequences of bankruptcy between debtors and creditors. Just how it did this is reflected throughout the Bankruptcy Code. It can be found in the sections identifying what becomes property of the bankruptcy estate and what is excluded from it, how the assets of the estate are distributed among creditors, the exemptions available to a debtor and the ways in which a debtor can deal with the property it has exempted, the circumstances under which a debtor may receive a discharge and the nature of the debts that will survive discharge, as well as many more.

\* \* \*

**Controlling the distribution of assets between a debtor and its creditors goes to the heart of the bankruptcy process.**
*In re Cross*, 255 B.R. 25, 32–34 (Bankr. N.D.Ind.2000) (emphasis added).

I differ with *Brown* is with respect to how the flaw it exposed is to be resolved. *Brown's* solution was to simply accept the majority's position that Rule 4003(b) permits only one round of objections. However, for the reasons I have already given, I agree with the minority that conversion of a case gives rise to a new opportunity to object to exemptions claimed. Nonetheless, the minority view cannot, as *Brown* correctly points out, just ignore the effect other aspects of the bankruptcy proceeding can have upon the exemption process and the ultimate question of how property of the estate is to be allocated between the debtor and his creditors.

Indeed, Rule 4003(b)'s relevance is not affected by Section 522(*l*) alone. For example, the doctrines of res judicata and collateral estoppel can also influence the outcome. The reported cases typically involve a converted proceeding where an objection to the exemption had not been previously made. What if, though, the prior trustee had in fact filed an objection but had lost? Would not the doctrine of res judicata bar re-litigation of the same objection in the subsequent Chapter 7 case regardless of what Rule 4003(b) might otherwise provide? Alternatively, would not the doctrine of collateral estoppel preclude a subsequent Chapter 7 trustee from objecting to the debtor's claimed exemption in a converted Chapter 7 if the exemption of that property had also been an issue in the Chapter 13 trustee's unsuccessful Section 1325(a)(4) objection to the debtor's prior plan?

Section 1327(b) offers yet another example. That section states that:

Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor.

11 U.S.C. § 1327(b).

Return again to the hypothetical of the debtor with the Honda and the Chevrolet.

However, assume this time that the debtor neglected to claim either vehicle as exempt at the outset of his Chapter 13 proceeding and that, therefore, the vehicles continued to belong to the bankruptcy estate at the time the debtor's plan was to be confirmed. May the debtor later claim either the Honda or Chevrolet as exempt in a subsequent Chapter 7?

The answer clearly would be yes if the debtor's Chapter 13 plan provided that the vehicles were to remain property of the estate post-confirmation. The debtor would simply amend his Schedule C at some point after the conversion to include either the Chevrolet or the Honda. Moreover, it is unlikely that the Chapter 7 trustee would have any objection to the amended exemption claimed because this hypothetical assumes both that the exemption is to be "in-kind" and that the value of each vehicle does not exceed the exemption allowed. Therefore, whatever vehicle the debtor chose as his exemption would thereupon pass from the bankruptcy estate to the debtor pursuant to Section 522(*l*) as part of that subsequent Chapter 7 proceeding.

Suppose, however, the debtor's Chapter 13 plan provided that both vehicles were to revest with the debtor upon confirmation. Or suppose the debtor's plan was silent regarding the vehicles' post-confirmation status. Would the debtor even need to later claim the Honda or Chevrolet as exempt if the Chapter 7 trustee were to thereafter attempt to administer one or both of the vehicles in a subsequently converted case?

■ The answer is no. Unless the debtor's plan provided otherwise, confirmation of the plan would have caused the two vehicles to be no longer the estate's property. *In re Van Stelle*, 354 B.R. 157

(Bankr.W.D.Mich.2006). Consequently, the problem here is the same as the problem exposed in *Brown*.[24] There is little question that the Chapter 7 trustee in this hypothetical would like to recover at least one of these vehicles so that it could be liquidated for the benefit of the bankruptcy estate's creditors. Unfortunately, there is no commensurate authority under the Bankruptcy Code for the Chapter 7 trustee to recover property already removed from the estate by Section 1327(b) or other lawful means.

> (a) Except as provided in subsection (b) or (c) of this section, the trustee may avoid a transfer of property of the estate—
>
> (1) that occurs after the commencement of the case; and
>
> (2)(A) that is authorized only under section 303(f) or 542(c) of this title; or
>
> (B) *that is not authorized under this title or by the court.*

11 U.S.C. § 549(a) (emphasis added). *See also, Van Stelle, Id.*[25]

However, it is also worth noting that reliance on Section 1327(b) as a substitute for the exemption process is not necessarily a commendable stratagem for a debtor seeking bankruptcy relief. Granted, it appears at first blush that the debtor in this hypothetical would be effectively exempting two vehicles when Section 522(d)(2) in fact permits the exemption of only one. In reality, though, the debtor would be receiving the benefit of no exemption, for the protection afforded by Section 522(c) is only available to property that has actually been exempted. That is, the debtor's failure in this hypothetical to exempt the vehicles in his prior Chapter 13, coupled with his successful removal of those vehicles from the bankruptcy estate through the subsequent confirmation of his Chapter 13 plan, would have left both vehicles "liable ... for any debt ... that arose ... before the commencement of the case," 11 U.S.C. § 522(c). Indeed, this would be so even though the debtor himself would be protected from those same pre-petition debts through the separate Section 524(a)(2) injunction issued post-conversion in conjunction with his Chapter 7 discharge.

Moreover, the debtor in this hypothetical would not be able to unilaterally correct his error in the subsequent Chapter 7 proceeding by then claiming one or the other vehicle as exempt because Section 522(b)(1) is also quite clear: exempt property may be selected from only property of the bankruptcy estate. Ironically, the

---

**24.** Therefore, unless there is some mechanism for the debtor's property to reenter the bankruptcy estate upon conversion, it would seem that exemptions in the Chapter 11, once considered final and unobjectionable under the rule in *Taylor*, must be considered final and unobjectionable in the converted case as well. *In re Brown*, 178 B.R. at 727.

**25.** Removal of property from a Chapter 13 or Chapter 11 estate by operation of either Section 522(*l*) or 1327(b), of course, is not inevitable. Proponents of the minority position argue that estate representatives in Chapters 11 and 13 do not have the same motivation as their Chapter 7 counterparts to object to exemptions claimed. *See, e.g., In re Campbell*, 313 B.R. at 319, *In re Hopkins*, 317 B.R. 726, 732–33 (Bankr.E.D.Mich.2004). That may be so. However, there are options short of filing an objection. For example, a Chapter 13 trustee could, subject to the debtor's objection, seek the indefinite extension of the time within which to object under Rule 4003(b) in instances where it appears that there is a considerable amount of non-exempt equity. The Chapter 13 trustee might also insist that the plan provide for the retention of the subject property as estate property so as to prevent its removal under Section 1327(b). Indeed, the Chapter 13 trustee could object to confirmation of the plan altogether if the feasibility of the debtor's contemplated effort to compensate creditors for the non-exempt equity is in question.

debtor in this hypothetical would be left to bargaining with the Chapter 7 trustee to accept the return of the vehicles to the bankruptcy estate in order to then claim his exemption if it later turned out that the protection of Section 522(c) was desired.

■ To summarize, the various hypotheticals I have given establish that Rule 4003(b) simply sets the time frames within which a party in interest, whether that party is a trustee or a creditor, may challenge the debtor's effort to remove property from the bankruptcy estate through the Section 522 exemption process. Moreover, the unambiguous language of the rule itself indicates that a party in interest has a new time frame within which to voice his objection to an exemption claimed in the event the debtor's case is later converted to a different chapter.[26]

However, the fact that Rule 4003(b) provides this second chance does not guarantee that an objection will be successful, for any number of pre-conversion events can render the subsequent opportunity to object moot. If, for example, the prior Chapter 13 trustee had struck an agreement with the debtor concerning an ex-

emption claimed during the course of the Chapter 13, then that agreement would continue to bind the bankruptcy estate regardless of whether the case is later converted and the successor trustee disagrees with the agreement reached. Similarly, if the Chapter 13 trustee had objected to an exemption claimed and had lost, then the doctrine of res judicata would bar the Chapter 7 trustee from thereafter re-litigating the same objection. And finally, a subsequent Chapter 7 trustee's objection to a claimed exemption in a converted Chapter 7, no matter how valid, would be meaningless if the debtor had in the prior Chapter 13 already removed the subject property from the bankruptcy estate through his successful selection at that time of the property as an in-kind exemption, 11 U.S.C. § 522($l$), or as part of a more general return of estate property to him upon plan confirmation. 11 U.S.C. § 1327(b). If there is any consolation for trustees, it is that debtors too are subject to the consequences of actions previously taken. For example, if the Chapter 13 trustee had objected to an exemption claimed and had won, it would then be the debtor who would be barred by res judica-

---

**26.** In *Rogers v. Laurain (In re Laurain),* 113 F.3d 595 (6th Cir.1997), the Sixth Circuit stated that "Rule 4003(b) should be viewed as jurisdictional." *Id.* at 597. The wording chosen, though, is unfortunate, for if, as I have concluded, the minority interpretation of that rule is correct, it suggests that the court's jurisdiction concerning a challenged objection can be turned off and on again like a light switch as the debtor converts from one case to another.

However, jurisdiction addresses only a court's general authority to exercise its powers. "It [jurisdiction] is the power of the court to decide a matter in controversy and presupposes the existence of a duly constituted court with control over the subject matter and the parties." BLACK'S LAW DICTIONARY, Sixth Ed. (1990). In reference to bankruptcy matters, the court's jurisdiction arises upon the commencement of a bankruptcy case and

it extends thereafter without interruption to all matters falling within the scope of 28 U.S.C. § 1334 and the applicable local reference rule. *See also,* 28 U.S.C. § 157. It does not cease simply because some proscribed deadline has been missed during the course of administration.

This is not to say that *Rogers* was wrongly decided. The majority's opinion is well reasoned given the language of Rule 4003(b) at that time. *See, In re Travel 2000, Inc.,* 264 B.R. 451, 453 n. 2 (Bankr.W.D.Mich.2001). However, I believe that the majority inadvertently referred to the issue before it as relating to the bankruptcy court's jurisdiction (*i.e.,* its general authority to adjudicate matters arising in or related to a bankruptcy case) when in fact the issue before it involved only the interpretation of a procedural rule as to when parties could request the court to exercise the jurisdiction already granted.

ta in a converted case from again attempting to remove the property from the estate under the same claim of exemption.

In reaching these conclusions, I am not ignoring Section 348(a)(1)(A). That section states that:

(f)(1) Except as provided in paragraph (2), when a case under chapter 13 of this title is converted to a case under another chapter under this title—

(A) property of the estate in the converted case shall consist of property of the estate, as of the date of filing of the petition, that remains in the possession of or is under the control of the debtor on the date of conversion;

11 U.S.C. § 348(f)(1)(A).

As already discussed, the flaw that the court in *Brown* and I have both found in the minority's position regarding Rule 4003(b) is the failure to explain how property that has been removed from, for example, a Chapter 13 estate as an allowed exemption can then be returned to the bankruptcy estate for further administration in the event the case is later converted to Chapter 7. Some minority view courts have relied upon Section 348(f)(1)(A) to respond to this criticism. For example, in *Campbell,* the panel stated that:

Property claimed as exempt is property of the estate on a debtor's petition date. It revests in the debtor when the exemption is allowed, either by court order or because of the lack of a timely objection. Property of the estate also revests in the debtor upon the confirmation of a Chapter 13 plan under § 1327(b). Such revested property, being property that was property of the estate on the date that a debtor files a Chapter 13 petition, is property of the Chapter 7 estate upon conversion under § 348(f) if it is still in the debtor's possession. To allow property revested under § 522(*l*) to be excluded from the scope of § 348(f) would

require that property revested under § 1327(b) to likewise be excluded. This would have the effect of rendering § 348(f) meaningless in Chapter 13 cases converted after the confirmation of a plan. The revesting of property under § 522(*l*) does not immunize it from being brought into the estate upon conversion of a Chapter 13 case. (footnotes omitted).

*In re Campbell,* 313 B.R. at 321. *See also, In re Wiggins,* 341 B.R. 501, 505–6 (M.D.Pa.2006).

However, I do not agree with *Campbell* that Section 348(f) has meaning only if property previously removed from the bankruptcy estate by operation of Sections 1327(b) or 522(*l*) "springs back" to the bankruptcy estate upon conversion of the case to Chapter 7. *Campbell* is certainly correct that Section 348(f)(1)(A) has no meaning, or more accurately, no relevance, in situations where the subject property was previously removed from the estate by either of these sections. However, Section 348(f)(1)(A) would still be relevant in those instances where the debtor's plan provided that some or all of the bankruptcy estate's property that remained at the time of confirmation was to continue as property of the estate post-confirmation. 11 U.S.C. § 1327(b). Section 348(f)(1)(A) would also continue to be relevant in those many other instances where the Chapter 13 case is converted to Chapter 7 before confirmation since Section 1327(b) applies only when a Chapter 13 plan is actually confirmed.

Moreover, *Campbell* disregards the fact that cases under Chapter 11 and Chapter 12 may also be converted to Chapter 7 and that these other chapters have the same provision as Chapter 13 regarding the vesting of property with the debtor upon plan confirmation. *Compare,* 11 U.S.C.

§§ 1141(b), 1227(b), and 1327(b).[27] Section 348(f), though, applies only to converted Chapter 13 cases. Consequently, if, as *Campbell* would have it, Section 348(f) is to include an implicit recovery of property previously removed from the Chapter 13 estate by operation of either Section 1327(b) or, by extension, Section 522(*l*), then one is left to wonder why Congress would not have provided for the same type of recovery when an individual Chapter 11 or Chapter 12 debtor converts his case to Chapter 7.

I am also reluctant to accept *Campbell's* interpretation of Section 348(f) because that interpretation does not protect good faith transferees. Suppose, for example, that a debtor, after successfully exempting his home in the Chapter 13 proceeding, sells the home but reserves for himself either a life estate or a leasehold. If *Campbell's* reasoning were to apply, then the entire fee interest, as opposed to just the leasehold or life estate reserved, would again become property of the estate notwithstanding the intervening good faith purchase of that fee by the third party.

■ Finally, not even the legislative history underlying Section 348(f) offers support for the implicit right to recover that *Campbell* finds between the lines of that enactment. Conversion of a Chapter 13 case to a Chapter 7 always poses a problem because the bankruptcy estate in a Chapter 13 case, unlike the bankruptcy estate in a Chapter 7 case, includes not only the debtor's pre-petition property but whatever the debtor might also have acquired during the course of the Chapter 13 proceeding. 11 U.S.C. § 1306(a).[28] Courts had been divided prior to the enactment of Section 348(f) as to how this post-petition accumulation was to be accounted for in the event the case later converted to Chapter 7. The purpose of Section 348(f) was to resolve that division.

> This amendment would clarify the Code to resolve a split in the case of [sic] law about what property is in the bankruptcy estate when a debtor converts from chapter 13 to chapter 7. The problem arises because in chapter 13 (and chapter 12), any property acquired after the petition becomes property of the estate, at least until confirmation of a plan. Some courts have held that if the case is converted, all of this after-acquired property becomes part of the estate in the converted chapter 7 case, even though the statutory provisions making it property of the estate does not apply to chapter 7. Other courts have held that the property of the estate in a converted case is the property the debtor had when the original chapter 13 petition was filed.

H.R.Rep. No. 103–834, 103rd Cong. (2d Sess.1994); 140 CONG. REC. H10770 (1994); 1994 WL 545773 (Cong.Rec.).[29]

---

27. In fact, several of the reported cases concerning the issue at hand involved cases converted from Chapter 11. *See, e.g., Brown,* 178 B.R. 722, *Halbert,* 146 B.R. 185, and *Wolf,* 244 B.R. 754.

28. A Chapter 13 estate will include whatever the debtor has acquired post-petition in the event the case is converted prior to confirmation of a plan. However, a post-confirmation Chapter 13 estate will not include whatever post-petition property remained with the estate at confirmation unless the plan specifically provided for the retention of that property.

11 U.S.C. § 1327(b). Nonetheless, even a post-confirmation Chapter 13 estate gutted by Section 1327(b) will still include post-petition assets not otherwise included in a Chapter 7 estate since the Chapter 13 estate will continue to be augmented by whatever property the debtor might acquire post-confirmation. 11 U.S.C. § 1306. *See also, In re Van Stelle,* 354 B.R. 157, 170–171 (Bankr.W.D.Mich.2006).

29. The inclusion of subpart (2) in Section 348 also reinforces the conclusion that Section 348(f)(1)(A) does not include, as *Campbell* would have it, an implicit mechanism to re-

Consequently, I do not interpret Section 348(f)(1)(A) as implicitly empowering Chapter 7 trustee's in converted cases to recover property lawfully removed from the estate in the prior chapter proceeding. Rather, I interpret the reference in Section 348(f)(1)(A) to "property of the estate, as of the filing of the petition" as merely an acknowledgment that, upon conversion from Chapter 13 to Chapter 7, the bankruptcy estate is to be shed of whatever it had accumulated as post-petition assets under Section 1306 so as to resemble what the converted estate would have looked like had the case been in fact administered from the outset as a Chapter 7 proceeding.

In the instant case, it is easy to see that the Chapter 7 trustee's objection to Debtor's claimed exemption in the McMillan residence would have been timely had there not been the conversion from the prior Chapter 13. The meeting of creditors in what would have then been an original Chapter 7 case concluded no earlier than December 13, 2006 and the Chapter 7 trustee's objection was filed on December 20, 2007, only seven days later. Moreover, even if the objection had not been made, the Chapter 7 trustee would still have had the opportunity to adminis-

ter the property because of the acknowledged non-exempt equity. In other words, the McMillan residence would have remained property of the estate notwithstanding Section 522(*l*) had Debtor's case been administered as a Chapter 7 from the outset.

Nor would conversion of this case from Chapter 13 to Chapter 7 have affected the Chapter 7 trustee's right to object to Debtor's claimed objection had the prior Chapter 13 plan provided for the bankruptcy estate's post-confirmation retention of the McMillan residence. Under that scenario, the property would have remained property of the estate upon conversion because of the acknowledged non-exempt equity and, therefore, it would have been still subject to the Chapter 7 trustee's further administration. Consequently, it stands to reason that Debtor's continuing effort to exempt $45,000 from whatever the Chapter 7 trustee might ultimately realize from this retained asset would also have been subject to the Chapter 7 trustee's new opportunity to object afforded under Rule 4003(b) by the conversion of the case and the attendant scheduling of another meeting of creditors.

trieve property that had been previously removed from the bankruptcy estate by operation of either Section 522(*l*) or Section 1327(b). Section 348(f)(2) provides that the property of the estate in a converted Chapter 7 will include post-petition property added to the estate by Section 1306 to the extent that property remains in the estate at the time of conversion if the debtor converted his case from Chapter 13 in bad faith. In other words, a debtor who has converted his Chapter 13 to Chapter 7 in bad faith is not entitled to the same Section 348(f)(1)(A) "downsizing" of the bankruptcy estate upon conversion as is the debtor who has converted his case in good faith.

However, Section 348(f)(2) is quite clear that only post-petition property that remains property of the Chapter 13 estate at the time of conversion is to become property of the

Chapter 7 estate as well. As such, one is hard pressed to read into this subpart an implicit mechanism to return property previously removed from the Chapter 13 estate prior to conversion by either Section 522(*l*) or Section 1327(b) even if one is otherwise inclined to join with *Campbell* in finding such an implicit mechanism between the lines of Section 348(f)(1)(A). If, though, a recovery is to take place under Section 348(f)(1)(A) but not under Section 348(f)(2), then one is certainly entitled to ask why Congress would have chosen to favor a bad faith debtor over a good faith debtor by letting the bad faith debtor keep assets that he had removed from the Chapter 13 estate prior to conversion as exempt or by operation of Section 1327(b) but by requiring the good faith creditor to return the same.

On the other hand, had Debtor not conceded in his prior Chapter 13 that there was non-exempt equity in the McMillan residence, and had Debtor instead sought the removal of the residence itself from the bankruptcy estate as an in-kind exemption, the Chapter 7 trustee's subsequent opportunity to object under Rule 4003(b) would have been irrelevant. Put differently, Debtor's in-kind exemption of the interest during the Chapter 13 proceeding would have removed the McMillan residence from the bankruptcy estate by operation of Section 522($l$) and, as such, the residence would not have been property of the estate in the ensuing Chapter 7 proceeding regardless of what the confirmed plan said about post-confirmation retention of estate property.[30]

■ However, the instant case presents a fourth scenario, that being one where the McMillan residence, albeit claimed as exempt, was not removed from the bankruptcy estate by operation of Section 522($l$) notwithstanding the absence of any objection by the Chapter 13 trustee. Rather, the residence remained as property of the estate because of the acknowledged non-exempt equity in the same. Nonetheless, the McMillan residence was ultimately removed from the estate during the Chapter 13 proceeding when Debtor's plan was later confirmed. 11 U.S.C. § 1327(b). Consequently, the residence was no longer subject to administration when the case was later converted to Chapter 7 and the Chapter 7 trustee filed her own objection to the exemption Debtor had previously claimed.

The good news for Debtor is that the Chapter 7 trustee can no more at this time compel the recovery of the McMillan residence than can the Chapter 7 trustee compel the recovery of any other property that was legitimately removed from the bankruptcy estate by operation of Section 1327(b) during the prior Chapter 13 proceeding. Therefore, it makes no difference that the Chapter 7 trustee now has a renewed opportunity to object to the constitutionality of the exemption Debtor had claimed in the residence more than a year and a half ago.

However, the bad news for Debtor is that the McMillan residence is not entitled to the protection afforded by Section 522(c) because the residence was not "exempted" from the bankruptcy estate by operation of Section 522($l$), but rather was simply removed at a later date through the confirmation process. Moreover, Debtor

---

**30.** Making a distinction between the in-kind exemptions of estate property and a "value," if you will, exemption of property that will otherwise remain in the bankruptcy estate for further administration does not run afoul of Congress' desire to offer a fresh start to debtors. Property that a debtor wishes to keep in-kind as exempt should be returned from the bankruptcy estate as soon as possible. *In re Anderson*, 357 B.R. at 460. Moreover, the need for certainty justifies denying a subsequent Chapter 7 trustee a second look at the property already exempted from the estate in the event of a conversion from another case.

However, a debtor's concession that there is non-exempt value in the targeted property negates the need for finality at the outset of the case. Granted, the debtor would certainly like to enjoy his share of the proceeds ultimately realized from the liquidation of the asset in question. However, consideration must also be given to the creditors' competing demand for sufficient time to maximize the non-exempt portion of whatever is realized from its liquidation. If it is that important for a Chapter 13 debtor, for example, to divest the bankruptcy estate of the non-exempt portion of property as well, the debtor may attempt to do so as part of the confirmation process. 11 U.S.C. § 1325(b). However, if that debtor chooses not to do so, then the debtor is in no position to later complain if a subsequent Chapter 7 trustee elects to take a second look at an exemption claimed in property that remains subject to the trustee's administration.

dummy

finds himself no longer in the position to secure that protection since, as already discussed, an exemption can be accomplished only if the property targeted is removed from the bankruptcy estate by operation of Section 522(*l*) and there is nothing that Debtor on his own can do to now put the property he previously removed through the plan confirmation back into the bankruptcy estate.

## *CONCLUSION*

Exempting property from the bankruptcy estate can be deceptive. On its face, it is simply the process of separating what the debtor is to keep from what the trustee may liquidate. However, as shown, other aspects of the bankruptcy process can have a profound impact upon the outcome in a particular case. The challenge, of course, is to step back far enough from the problem at hand so as to appreciate all of the processes at work.

In this instance, I am satisfied that the Chapter 7 trustee had the right under Rule 4003(b) to raise an objection concerning the constitutionality of the state exemption claimed in the McMillan residence even though that exemption was first asserted over two years ago. The recent conversion of this case from Chapter 13 to Chapter 7 caused a new meeting of creditors to be scheduled and, therefore, the Chapter 7 trustee had a new opportunity to object under Rule 4003(b). Indeed, the Chapter 7 trustee's objection would have been successful had Section 1327(b) not intervened since the McMillan residence would have otherwise remained as property of the estate for all of this time. However, Section 1327(b), combined with Debtor's confirmation of his plan in the prior Chapter 13 case, has rendered moot what otherwise appears to be both a timely and valid objection.

Therefore, for the reasons given, there is no reason for the Chapter 7 trustee to proceed with her objection to Debtor's claimed exemption in the McMillan residence. The court will enter a separate order consistent with this opinion.